P. J. McDade *vs.* George J. Moynihan & others.

Worcester. April 7, 1953. — September 21, 1953.

Present: Qua, C.J., Lummus, Wilkins, Williams, & Counihan, JJ.

*Equity Pleading and Practice*, Amendment, Judicial discretion, Appeal, Admissions in pleadings. *Equity Jurisdiction*, Change in situation during suit. *Constitutional Law*, Full faith and credit. *Public Policy*. *Judgment*. *Contract*, For confession of judgment. *Conflict of Laws*. *Jurisdiction*, By consent or waiver, Nonresident.

A judgment validly entered by confession in a Pennsylvania court as authorized by the judgment debtor in a valid contract with the judgment creditor made and to be performed in Pennsylvania was entitled to full faith and credit in Massachusetts even though the judgment creditor proceeded in Pennsylvania "to avoid" G. L. (Ter. Ed.) c. 231, § 13A, and the judgment debtor was not resident in Pennsylvania at the time the judgment was entered. [441–443]

The fact that a claim originally asserted in a bill in equity had been reduced to judgment in another proceeding between the same parties since the commencement of the suit might have been set up by a supplemental bill under the former equity practice and could be set up by amendment of the bill under the rules doing away with supplemental bills and substituting simple amendments therefor. [443–445]

The question of the proper exercise of discretion in dealing with a motion to amend the bill in a suit in equity was brought to this court by an appeal from a decree denying the motion. [445]

In all the circumstances of a suit in equity wherein the bill originally set forth a claim for an unpaid balance of the purchase price of corporate stock sold by the plaintiff to the defendant under a contract whereby the new stock certificate issued to the defendant was indorsed in blank and delivered to the plaintiff as security for the payment of the price, and also set forth a breach of a warranty by the defendant in such contract that the indebtedness of the corporation would at no time exceed a stated amount, a motion by the plaintiff to amend the bill by inserting allegations that since the commencement of the suit he had secured a Pennsylvania judgment against the defendant by confession for the unpaid balance of the price and by striking out the allegations respecting the breach of the warranty should have been allowed as a matter of discretion. [445–446]

The defendant in a suit in equity was bound by allegations in his answer setting up as a defence to the plaintiff's claim that it had been merged in a foreign judgment obtained by the plaintiff against the defendant. [447]

BILL IN EQUITY, filed in the Superior Court on October 25, 1949.

Interlocutory decrees denying a motion by the plaintiff to amend the bill and affirming the denial after rehearing of the motion were entered by order of *Fairhurst,* J., on April 25, 1951, and May 31, 1951, respectively, and the final decree was entered after hearing on the merits by *Leary,* J. In the first paragraph of the final decree the defendant Moynihan was ordered to pay the plaintiff $13,290.18. In the second paragraph it was ordered that in certain circumstances stock of the defendant Moynihan be sold by a special master and the proceeds applied "as follows: . . . (2) To pay the balance on any sum remaining due to the plaintiff on the sum found due under these findings . . . ."

*David A. Rose,* (*Irving Gashin* with him,) for the plaintiff.

*Samuel M. Salny,* for the defendant Moynihan.

QUA, C.J. The bill alleges that on May 20, 1947, the plaintiff, described as of Scranton, Pennsylvania, entered into a sealed agreement with the defendant Moynihan, described as of Fitchburg, Massachusetts, and one Hilferty, also named as a defendant and described as of parts unknown,[1] whereby Moynihan and Hilferty covenanted to buy of the plaintiff all the capital stock of the McMilton Corporation, together with certain so called "judgment notes" of that corporation, for the total price of $35,000 and interest; that they have failed to pay instalments of the price after the initial payment of $10,000; and that they have broken another provision of the agreement whereby they warranted that the accumulated outstanding bills and expenses of the corporation should at no time exceed $2,500. The prayers are that the amount due the plaintiff under the agreement be determined; that judgment and execution issue therefor; and that certain property alleged to belong to the defendant Moynihan be reached and applied in payment thereof. Since each separate breach of contract gives rise to a separate cause of action (Williston on Contracts [Rev. ed.] § 1292; *Watson* v. *Berman*, 302 Mass. 305), it is apparent that the plaintiff has declared upon different causes of action in this bill. The structure of the bill must be kept in mind through the following discussion.

The case is here upon appeal of the plaintiff from the denial of a motion to amend his bill and upon appeals of the plaintiff and of the defendant Moynihan from a final decree establishing a debt due from Moynihan to the plaintiff of $13,290.18 for breach of the warranty that the accumulated indebtedness of the corporation should not exceed $2,500, and providing for reaching and applying property of Moynihan in payment of that indebtedness.

The plaintiff also has a bill of exceptions directed to the denial of his motion to amend.

The agreement was executed in Pennsylvania where the McMilton Corporation carried on the business of operating

---

[1] Hilferty was never served and is not in fact a party to the suit.

a "Howard Johnson" restaurant. In addition to the provisions for sale and purchase of the stock and notes, the agreement provided in substance that the stock itself should be assigned back to the plaintiff as security for the unpaid balance of the purchase price; that Moynihan and Hilferty should operate the restaurant through the McMilton Corporation; that they should warrant the proper maintenance of the property, the payment of the rent under the existing lease and of the fire insurance, taxes, and expenses of operation; and that accumulated outstanding bills and expenses should at no time exceed $2,500. There was a further provision in a paragraph numbered 10 of the agreement whereby Moynihan and Hilferty, in case of any default by them, authorized any attorney of any court of record of Pennsylvania or elsewhere to appear for and enter judgment against them for the full purchase price with costs and with five per cent added for collecting fees. Other provisions of the agreement do not require recital here.

At the time of the execution of the agreement the plaintiff transferred to Moynihan and Hilferty all of the outstanding stock of the corporation, and they paid the $10,000 down payment on account of the purchase price. They also, at the same time, caused new stock·certificates to be issued in lieu of those which they received and delivered the new certificates indorsed in blank to the plaintiff "as security [as the trial judge found] for the payment of the balance of the purchase price," all substantially in accordance with the provisions· of the agreement. Moynihan and Hilferty operated the restaurant, or more accurately the McMilton Corporation operated it under their control, through July 18, 1949. By that time the outstanding indebtedness of the corporation had risen beyond the $2,500 permitted by the agreement to $12,214.94. This figure with interest and some adjustments is the amount which by the final decree the defendant Moynihan is ordered to pay to the plaintiff, all for breach of his warranty that the accumulated outstanding bills and expenses of the corporation

should at no time exceed $2,500. The decree contains no order for the payment of the balance of $25,000 of the purchase price of the stock and notes, although this sum remains unpaid and its recovery is the principal object of the bill.

This curious result was brought about by the denial of the plaintiff's motion to amend his bill. Whether this motion should be allowed is the most important question in the case, and we now direct our attention to it.

By this motion the plaintiff sought to add to that portion of his bill wherein he set forth his cause of action for the unpaid price further allegations that in pursuance of paragraph 10 of the agreement a judgment had been entered for the plaintiff against Moynihan and Hilferty in the Court of Common Pleas for the County of Lackawanna in Pennsylvania for the balance due with interest, and with five per cent added for collection. In his motion the plaintiff sought further to amend by striking out that portion of his bill in which he set up his claim for breach by Moynihan and Hilferty of their warranty that the accumulated outstanding bills and expenses should at no time exceed $2,500.

The judge who heard and denied the motion found that on November 25, 1949, which was a month after the filing of the bill in this suit, the plaintiff secured a confessed judgment, without notice to Moynihan and Hilferty, in accordance with the stipulation in the agreement. The judge suggests as reasons for denial of the motion that the plaintiff proceeded in Pennsylvania "to avoid the provisions of § 13A of c. 231 of the General Laws," and that in the proposed amendment "The original cause of action has been radically changed." Neither of these reasons, in our opinion, will stand critical examination. We deal with them successively.

General Laws (Ter. Ed.) c. 231, § 13A, to which the judge refers, is a statute of this Commonwealth which provides, among other things, that "Any stipulation in a contract, promissory note or other instrument, or in any memorandum or writing relating thereto, whereby a party thereto agrees

to confess judgment in any action which may be brought thereon or authorizes or agrees to authorize another person to confess judgment as aforesaid shall be void, and any judgment by confession taken in pursuance of such a stipulation shall be set aside and annulled on motion of the defendant." This statute fixes the law and establishes the policy of this Commonwealth with respect to judgments by confession; but it does not affect the law of Pennsylvania, and it does not empower the courts of this Commonwealth, because of our policy, to refuse full faith and credit according to the Constitution of the United States to the judgments of other States which are valid under the laws of those States. It is not uncommon for a judgment to be rendered in one State on grounds or in a manner which would be rejected in another State. The Constitution of the United States cannot in general be trimmed to suit the differing views of policy entertained in different States. *Roche* v. *McDonald,* 275 U. S. 449, 451–452. *Milwaukee County* v. *M. E. White Co.* 296 U. S. 268, 276–277. *Titus* v. *Wallick,* 306 U. S. 282, 291–292. There may be exceptional instances; "But the room left for the play of conflicting policies is a narrow one." *Broderick* v. *Rosner,* 294 U. S. 629, 642. *Williams* v. *North Carolina,* 317 U. S. 287, 294–295. *Magnolia Petroleum Co.* v. *Hunt,* 320 U. S. 430, 437–440. *Hughes* v. *Fetter,* 341 U. S. 609. It does not include a case like the present where the difference in policy is over the question whether a defendant can consent to be bound in advance of action brought or must be served with process afterwards. See *Christmas* v. *Russell,* 5 Wall. 290; *Fauntleroy* v. *Lum,* 210 U. S. 230; *Kenney* v. *Supreme Lodge,* 252 U. S. 411; *Roche* v. *McDonald,* 275 U. S. 449. It is not disputed that the law of Pennsylvania, like that of some other States, recognizes agreements for confession of judgment and permits the entry of judgment accordingly, as was done in this instance. See Purdon's Pa. Sts. Anno. Title 12, § 739. The agreement was executed by the parties to it in Pennsylvania and was to be performed there. Paragraph 10 of the agreement was valid, and the judgment

McDade *v.* Moynihan.

under it was valid and is entitled to full faith and credit in this Commonwealth. This conclusion is in accord with the reasoning as far as it goes in our own cases of *Richards* v. *Barlow,* 140 Mass. 218, and *Van Norman* v. *Gordon,* 172 Mass. 576. And see *Ferranti* v. *Lewis,* 271 Mass. 186. These cases, it is true, were decided before our statute was adopted. But our present decision is firmly supported by many authorities in numerous States, some of which are collected in the footnote.[1] Since jurisdiction over the defendant rests upon his own consent, these same authorities, where the question has arisen, generally agree that non-residence of the defendant in the State of the judgment at the time of the judgment is immaterial. See Restatement: Conflict of Laws, § 81. We are unable to perceive that the plaintiff did anything reprehensible or became chargeable with "unclean hands" when he proceeded to procure a judgment according to the law of his own State under the authority of a valid agreement made in that State.

The judge's second reason for denying the motion to amend — that the original cause of action would be "radically changed" — does not seem to us substantial as applied to this case. Technically a cause of action on a judgment is not the same as the original cause of action which was merged in the judgment. But the fact that since a suit in equity was brought judgment has been recovered on the cause of action, or on one of the causes of action, included in the bill seems to fall within the class of facts that under

[1] *Carlton* v. *Miller,* 114 Cal. App. 272.   *Vennum* v. *Holmberg,* 51 Colo. 306. *Carroll* v. *Gore,* 106 Fla. 582.   *Coane* v. *Girard Trust Co.* 182 Md. 577.   *In re Estate of Cook* v. *Brown,* 346 Mo. 281, 283.   *Ashby* v. *Manley,* 191 Iowa, 113. *Ritter* v. *Hoffman,* 35 Kans. 215.   *Ohio* v. *Eubank,* 295 Mich. 230.   *Whittier* v. *Riley,* 104 Neb. 805.   *Smith* v. *Swart,* 103 N. J. L. 150.   *Teel* v. *Yost,* 128 N. Y. 387.   *Gilbert* v. *Burnstine,* 255 N. Y. 348, 357.   *Morris* v. *Douglass,* 237 App. Div. (N. Y.) 747.   *Silver* v. *Smith,* 70 N. Y. Sup. (2d) 122.   *Federal Land Bank* v. *Garman,* 220 N. C. 585.   *Sipes* v. *Whitney,* 30 Ohio St. 69. *Williams* v. *Hirschfield,* 32 Okla'. 598.   *Coleman* v. *Waters,* 13 W. Va. 278, 305–307.   *Ellis* v. *Gordon,* 202 Wis. 134.   *Hastings* v. *Bushong,* 252 S. W. 246 (Tex. Civ. App.).   *Monarch Refrigerating Co.* v. *Farmers' Peanut Co.* 74 Fed. (2d) 790 (certiorari denied sub nomine *Farmers' Peanut Co.* v. *Monarch Refrigerating Co.* 295 U. S. 732).   *Turner* v. *Alton Banking & Trust Co.* 181 Fed. (2d) 899, 905. Restatement: Conflict of Laws, § 446.   40 A. L. R. 441. 89 A. L. R. 1503.   Implications to the same effect are found in *Grover & Baker Sewing Machine Co.* v. *Radcliffe,* 137 U. S. 287, and *National Exchange Bank* v. *Wiley,* 195 U. S. 257.

general equity practice can be set up by supplemental bill in order that the final decree may respond to the facts existing at the time of its entry and cover the entire controversy without leaving anything outstanding. This principle may be applied in proper instances, even though the supplemental bill may contain what is technically a new cause of action, arising after the suit was brought, if the new cause of action grew out of circumstances forming the subject of the original bill. There are many illustrations in our decisions. *Fordyce* v. *Dillaway*, 212 Mass. 404, 411. *Collins* v. *Snow*, 218 Mass. 542, 545–546. *Bartlett* v. *New York, New Haven & Hartford Railroad*, 226 Mass. 467, 471–472. *Leavitt* v. *Dimond*, 227 Mass. 216, 219. *E. Kronman, Inc.* v. *Bunn Bros. Inc.* 258 Mass. 562, 567–568. *International Correspondence Schools* v. *Hunneman*, 260 Mass. 198, 201. *Richards* v. *Richards*, 270 Mass. 113, 123. *Atlantic National Bank* v. *Hupp Motor Car Corp.* 300 Mass. 196, 202–203. See *Bethlehem Fabricators, Inc.* v. *H. D. Watts Co.* 286 Mass. 556, 569–570. When supplemental bills were done away with and simple amendments substituted by what is now Rule 21 of the rules of this court for the Regulation of Practice at Common Law and in Equity, 328 Mass. 714, and Rule 16 of the Superior Court (1932) the intent was merely to simplify the method of presenting the subject matter to the court. There was no intent to prevent the presentation of any matter by amendment that could formerly have been presented by supplemental bill or to subject so called "Amendments by Way of Supplemental Bill" to any limitations contained in the practice act relative to other kinds of amendments. See G. L. (Ter. Ed.) c. 231, § 51. Moreover, in view of the extreme liberality that prevails in this Commonwealth relative to amendments, we do not mean to imply that a proposed amendment merely setting up the fact that the cause of action originally declared upon has since been reduced to judgment cannot, for purposes of amendment, be found to be "for the cause for which . . . [the action] was intended to be brought" within the meaning of the

quoted words as they appear in § 51. *Standard Oil Co. of New York* v. *Y-D Supplies Co.* 288 Mass. 453, 457. *H. C. Miner Litho. Co.* v. *Wagner,* 177 Mass. 404, 406–407. See *Goodrich* v. *Bodurtha,* 6 Gray, 323; *Smith* v. *Palmer,* 6 Cush. 513, 519.

But we are reminded that the allowance of amendments is discretionary with the trial judge. This is true. It is also true that in equity an appeal brings to this court questions of discretion as well as questions of law, although ordinarily much weight is given to the action of the trial judge. *Old Colony Trust Co.* v. *Third Universalist Society of Cambridge,* 285 Mass. 146, 151, and cases cited. *Abbott* v. *Bean,* 285 Mass. 474, 478–479. *Long* v. *George,* 296 Mass. 574, 579, and cases cited. *D. J. Doyle & Co. Pty. Ltd.* v. *Darden,* 328 Mass. 288, 290. Furthermore, this court "upon any appeal" has "all the powers of amendment of the court below." G. L. (Ter. Ed.) c. 231, § 125.

Treating the question of amendment as a matter of discretion, we think that the amendment should have been allowed, and that it should now be allowed. No question of disputed fact is involved. It is manifest from the agreement itself that the primary right of the plaintiff is to recover the unpaid portion of the price of the stock and notes sold by him. This price is now represented by the Pennsylvania judgment. If the plaintiff recovers the price, in other words the amount of that judgment and interest, he will not be entitled to recover for breach of the warranty that the accumulated outstanding bills and expenses should at no time exceed $2,500, since the breach of that warranty will have caused him only nominal damages. The plaintiff himself recognized this when in his motion to amend, in addition to seeking to set up the Pennsylvania judgment, he also sought to strike out his cause of action on the warranty against the accumulation of bills and expenses. The obvious purpose of that warranty was to insure until the price should be paid in full the value of the stock which was to be held by the plaintiff as security for the price. It is true that there are instances where a defendant has bound

himself to two separate obligations, one collateral to the other, and where two judgments have been rendered against him even though both could not lawfully be enforced. *Vanuxem* v. *Burr*, 151 Mass. 386. *Burnham* v. *Windram*, 164 Mass. 313. But so far as we know this principle has never been extended to permit the entry of two decrees for the payment of money against the same defendant in the same suit in equity, one of which is merely collateral to the other, or the entry of a single decree part of which is collateral to another part. There seems to be no sufficient reason for introducing such confusion. Other possible reasons why the plaintiff cannot recover more than the Pennsylvania judgment need not be considered, except to add that claims of the plaintiff for the sum of $5,117.83, which the trial judge on oral evidence did not find to have been sustained, and for a further sum of $1,000 seem at best to have been for money lent by the plaintiff either to the McMilton Corporation or to the defendant Moynihan and are not within the scope of the bill.

Refusal of the amendment has led to a hearing and decree upon a secondary or collateral issue, while the full faith and credit to which the plaintiff was entitled for his Pennsylvania judgment have hitherto been denied to him in this Commonwealth where the principal defendant resides and where alone in all probability the plaintiff can collect. Moreover, the defendant Moynihan now has outstanding against him the Pennsylvania judgment, the amount of which he ought to pay, and in addition thereto a decree in this Commonwealth upon a secondary liability which he ought not to be called upon to satisfy if he pays the Pennsylvania judgment. Nothing would be gained by refusing the amendment and compelling the plaintiff to begin his suit all over again. Besides, the disposition of a substantial sum of money paid into court to abide the result of the present suit would be left in doubt. The entire controversy will be set at rest if the defendant Moynihan now pays the unpaid amount of the Pennsylvania judgment.

There appears to be no occasion for further pleading or

hearing after allowance of the amendment to the plaintiff's bill. The defendant Moynihan does not dispute the fact that the Pennsylvania judgment is valid in Pennsylvania. On the contrary, he sets up that judgment in his answer as a defence in this suit and asserts that the plaintiff's original "claim" for breach of contract has been merged in the judgment and so cannot form the basis of the present suit. He argues the same contention in his brief. For the purposes of this cause he is bound by the facts he has so clearly admitted. *Markus* v. *Boston Edison Co.* 317 Mass. 1, 7. *Kneeland* v. *Bernardi,* 317 Mass. 517, 519–520. *Adiletto* v. *Brockton Cut Sole Corp.* 322 Mass. 110. *Carson* v. *Brady,* 329 Mass. 36, 40.

The interlocutory decrees of April 25, 1951, and May 31, 1951, denying the plaintiff's motion to amend his bill are reversed, and an interlocutory decree is to be entered allowing the motion. The final decree is to be modified in paragraph 1 by requiring the defendant Moynihan to pay to the plaintiff any unpaid balance of the Pennsylvania judgment with any unpaid interest thereon according to the law of Pennsylvania, instead of the sum named in the present final decree. The second paragraph of the final decree in the sentence numbered "(2)" at the end will be modified by striking out the words "these findings" and substituting the words "this decree." The decree will also provide that it is without prejudice to any right the defendant Moynihan or Hilferty may have to recover from the plaintiff through any appropriate proceeding the stock of the McMilton Corporation which was pledged to the plaintiff, or any part thereof, or its value, upon final payment to the plaintiff of the full amount of the Pennsylvania judgment with all accruals thereon. As so modified the final decree is affirmed with costs of these appeals to the plaintiff. Since we have dealt with the case fully upon the plaintiff's appeals, his bill of exceptions is dismissed.

*So ordered.*