31 Mass. App. Ct. 348 (1991)
577 N.E.2d 639
CONNECTICUT NATIONAL BANK OF HARTFORD
vs.
RICHARD KOMMIT & another.[1]
No. 89-P-1116.
Appeals Court of Massachusetts, Middlesex.
March 13, 1991.
September 10, 1991.
Present: PERRETTA, SMITH, & GILLERMAN, JJ.
Neal M. Brown for the defendants.
Robert E. Fierman for the plaintiff.
PERRETTA, J.
It is the law of Massachusetts (G.L.c. 137, § 3), Connecticut (Gen. Stat. § 52-553 [1960]), and New Jersey (Stat. Ann. § 2A:40-3 [West 1987]), that a contract *349 to pay money knowingly lent for gambling is void. New Jersey, however, has an exception to this rule, its so-called Casino Control Act, N.J. Stat. Ann. § 5:12-101 (West 1988). That statute, essentially, provides that a loan made for casino gambling in Atlantic City is legal and enforceable. See Gottlob v. Lopez, 205 N.J. Super. 417 (1985). The Kommits are Massachusetts residents who hold a Mastercharge card pursuant to a credit agreement with the Connecticut National Bank of Hartford (bank). The bank brought this action in Massachusetts seeking payment of $5,500 borrowed by the Kommits with the use of their card. The Kommits refused to pay because, as appears from Richard Kommit's affidavit filed in opposition to the bank's motion for summary judgment, he borrowed the money for gambling. It seems that, "on diverse dates" while at a casino in Atlantic City, Richard Kommit used his Mastercharge card to withdraw a total of $5,500 from an automatic teller machine. That machine was located in the "pit," the gambling area, of the casino. He claims that the machine was intended "to advance funds expressly for the purpose of gambling." Denying none of these facts, the bank argued that the debt is enforceable under New Jersey law. The Kommits relied upon Massachusetts law. The judge concluded that there was nothing in the undisputed facts which "offended Massachusetts public policy" and allowed the bank's motion. Because New Jersey law is not controlling and because there is a disputed issue of material fact, whether the bank knew that the money it lent to Richard Kommit was intended for gambling, we reverse the judgment.
1. The choice of law. There are three States which have an interest in this action: Massachusetts, where the Kommits reside, Connecticut, the bank's principal place of business, and New Jersey, where the money was withdrawn and used to gamble. The bank argues that, because Richard obtained the money in New Jersey for a purpose there legal, the substantive law of that forum controls under Massachusetts choice-of-law rules. As authority for that proposition, the bank has *350 relied, in the Superior Court and before us, upon Dicker v. Klein, 360 Mass. 735 (1972).
In Dicker, the plaintiff sought to recover on a debt incurred in the Bahama Islands for purposes of casino gambling. Applying the lex loci rule, the court looked to the law of the Bahama Islands. As the debt was void under the substantive law of that forum, the court refused to enforce it. From this conclusion, the bank reasons that had the debt been valid under the law of the Bahama Islands, it would have been enforceable in Massachusetts.
We do not view Dicker as dispositive for two reasons. In the first instance, Massachusetts has abandoned the lex loci rule, see Choate, Hall & Stewart v. SCA Servs., Inc., 378 Mass. 535, 540-541 (1979), and we now "determine the choice-of-law question by assessing various choice-influencing considerations." Bushkin Assocs. v. Raytheon Co., 393 Mass. 622, 631 (1985). Additionally, the question whether Massachusetts would enforce a debt legal where incurred but void under our substantive law was not present in Dicker v. Klein, because, as there noted, 360 Mass. at 737, the law of the Bahama Islands was "in accord with our own public policy."[2] But see Restatement (Second) of Conflict of Laws § 90 (1969) ("No action will be entertained on a foreign cause of action the enforcement of which is contrary to the strong public policy of the forum").
Turning to the "various choice-influencing considerations" discussed with Restatement (Second) of Conflict of Laws § 6, in Bushkin Assocs. v. Raytheon Co., 393 Mass. at 634, we consider the fact that this type of debt has been considered so offensive to the public policy of the bank's principal place of business that Connecticut refused to enforce a gambling contract notwithstanding its validity in the State where the debt was incurred. See Ciampittiello v. Campitello, 134 Conn. 51 (1947). More recently, in Casanova Club v. Bisharat, 189 Conn. 591, 598 (1983), the Connecticut Supreme Court held that, although its Legislature had legalized *351 some forms of gambling, gambling on credit remains a forbidden "vice" under Conn. Gen. Stat. §§ 52-553 and 52-554 (1960 & Supp. 1990).
Although the bank may have thought itself in compliance with the laws of New Jersey, and even though Richard may have known that his debt would be void under the law of Connecticut, we must also consider the facts that the bank expressly intended Connecticut law to control the use of its credit cards and that the Kommits accepted that condition. See Restatement (Second) of Conflict of Laws § 6(2)(d) and comment g. The bank's form credit contract conspicuously states: "This agreement and the use of your account is governed by Connecticut Law."[3] This clause, if enforced, favors the bank, which cannot control the use to which a person puts borrowed money obtained against a line of credit to which there is ready access from almost anywhere. It would be commercially unreasonable to have each incident of use of a bank's credit cards controlled by the law of the forum of the specific transaction. See Restatement (Second) of Conflict of Laws § 6(2)(g) and comment j, stressing that choice-of-law rules should lead to "desirable results."
Had this action been brought in New Jersey, that forum, under its choice-of-law rules, would have applied Connecticut law. Although the transaction occurred in New Jersey, that State would have looked to the law chosen by the parties in *352 the credit card agreement and to the strong public policy of Connecticut. See Mullaly v. Carlisle Chem. Works, Inc., 177 F. Supp. 588, 591-592 (D.C.N.J. 1959); McCabe v. Great Pac. Century Corp., 222 N.J. Super. 397, 399-400 (1988); Bell v. Merchants & Businessmen's Mut. Ins. Co., 241 N.J. Super. 557, 561-563 (1990). Cf. Winer Motors, Inc. v. Jaguar Rover Triumph, Inc., 208 N.J. Super. 666, 672 (1986) ("We will reject even the parties' choice of New Jersey local law in order to preserve the fundamental public policy of the franchisee's home state [Connecticut] where its statutes afford greater protection"). See also Restatement (Second) of Conflict of Laws § 6 comment d ("Probably the most important function of choice-of-law rules is to make the interstate and international systems work well. Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them. In formulating rules of choice of law, a state should have regard for the needs and policies of other states and of the community of states"). See generally Annot., Law of Forum Against Wagering Transactions as Precluding Enforcement of Claim Based on Gambling Transactions Valid Under Applicable Foreign Law, 71 A.L.R.3d 178 (1976).
There is no reason for us not to honor the parties' choice of Connecticut law, especially in view of the fact that Connecticut (and Massachusetts) still provide the bank with ample protection: the debt is void only if the bank knew or should have known that the money was borrowed for gambling. See Casanova Club v. Bisharat, 189 Conn. at 595-597; Conn. Gen. Stat. §§ 52-553 and 52-554 (1960 & Supp. 1991). See also Kemp v. Hammond Hotels, 226 Mass. 409, 415-416 (1917); G.L.c. 137, § 3.
2. The material fact. In opposing summary judgment, the Kommits filed an affidavit from Richard claiming that the bank, by allowing ready access to credit from the automatic teller machine in the center of the casino's gambling area, knew or should have known that the borrowed money would be used to gamble. Although the bank would have no burden on the issue of its knowledge at trial, it was incumbent upon *353 the bank to show that proof of its knowledge was unlikely to be produced at trial. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714-716 (1991), discussing and applying Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).
We think that the bank's alleged and unrefuted deliberate allowance of access to credit from the machine in the gambling area of the casino is a circumstance from which the essential element of the Kommits' defense to the action, knowledge, could (but need not) be inferred. It makes no difference that at the time of the motion the Kommits did not cite Connecticut law. The point of the matter is that, if the judge decided the motion on the basis of Dicker v. Klein, 360 Mass. 735 (1972), and the substantive law of New Jersey, he was in error, and there is a question of fact open under the law of Connecticut.
Judgment reversed.
NOTES
[1] Michelle B. Kommit.
[2] See Kemp v. Hammond Hotels, 226 Mass. 409 (1917); Haller v. Workingmen's Co-op. Bank, 263 Mass. 37 (1928); G.L.c. 137, § 3.
[3] The bank argues that, because the Kommits did not raise the issue of the applicability of the substantive law of Connecticut in the Superior Court, they cannot assert the contract and its choice-of-law clause on appeal. See Trustees of the Stigmatine Fathers, Inc. v. Secretary of Admin. & Fin., 369 Mass. 562, 565 (1976). We consider the clause because the broader issue of choice-of-law was squarely raised. Moreover, the bank's action rests on the contract, the terms of which it does not dispute. Additionally, the parties' choice of law is not conclusive. See Morris v. Watsco, Inc., 385 Mass. 672 (1982); Bushkin Assocs. v. Raytheon Co., 393 Mass. at 634. There is the added fact that, in respect to gambling, the law of Connecticut tracks that of Massachusetts, which the Kommits did argue. Finally, the bank availed itself of the opportunity to argue this question of law on appeal. In sum, our consideration of the parties' choice of law does no violence to the rule that an issue cannot be raised for the first time on appeal. Contrast Milton v. Civil Serv. Commn., 365 Mass. 368, 379 (1974).