In re Edward G. LEROUX, Jr., Debtor.

Bankruptcy No. 92–20403–WCH.

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

Dec. 18, 1997.

Andrew L. Cohen, Timothy R. Epp, Douglas R. Gooding, Paul D. Moore, Choate, Hall & Stewart, Boston, MA, for debtor.

Patrick G. Waters, Gargill, Sassoon & Rudolf, Boston, MA, for Creditor Committee.

Gary W. Cruikshank, Boston, MA, for Movants.

## DECISION REGARDING MOTIONS FOR RECONSIDERATION OF ORDER WITH RESPECT TO DEBTOR'S FIRST AMENDED OMNIBUS OBJECTION TO CLAIMS

WILLIAM C. HILLMAN, Bankruptcy Judge.

### I. *Introduction*

I consolidated for consideration three motions for reconsideration of the Order With Respect to Debtor's First Amended Omnibus Objection to Claims Pursuant to 11 U.S.C. § 502 and Fed.R.Bankr.P. 3007 (the "Order"). In essence, three creditors ask that I reconsider the Order on the grounds that the claims objection procedure in this case was confusing. The Official Committee of Unsecured Creditors (the "Committee") supports reconsideration. The Debtor objects to the motions asserting that the procedure was clear and that, in any event, the underlying claims cannot be allowed because they are void as against the public policy of Massachusetts.

## II. *Background*

On October 8, 1996, I entered an order confirming the Debtor's Amended Plan of Reorganization (the "Confirmation Order"). Pursuant to the terms of the Confirmation Order, the Debtor was to file any objections to proofs of claims on or before 90 days after the Effective Date of the Amended Plan.

On January 14, 1997, the Debtor filed a "Motion to Extend Time Within Which to Object to Claims" in which he sought an extension until February 28, 1997 to file any objections to claims (the "Extension Motion"). I granted that motion on January 22, 1997.

Also on January 14, 1997, Judge Woodlock of the United States District Court for the District of Massachusetts entered an order vacating the Confirmation Order and remanding confirmation proceedings to this Court.

On January 17, 1997, the Debtor filed "Debtor's Omnibus Objection to Claims Pursuant to 11 U.S.C. § 502 and Fed.R.Bankr.P. 3007" (the "Omnibus Objection"). Also on that date, the Debtor filed "Debtor's Motion for Order Suspending Further Proceedings with Respect to Debtor's Objections to Claims Pending Resolution of Confirmation" (the "Suspension Motion"). In the Suspension Motion, the Debtor sought "... an order suspending further proceedings on the Debtor's omnibus objection to claims which has been filed simultaneously herewith ... pending this Court's resolution of litigation concerning the ... [Confirmation Order] entered by this Court on October 8, 1996, but subsequently vacated ..." Suspension Motion at p. 1.[1]

In the "WHEREFORE" clause of the Suspension Motion the Debtor requested that the Court enter an order as follows:

1. Suspending further proceedings with respect to the Objection pending further order of this Court;

2. Providing the Debtor need not serve the Objection on affected claimants until after litigation concerning the Confirmation Order is resolved by this Court;

3. Providing that claimants are not required to respond to the Objection and no hearing will be scheduled on the Objection until further order of the Court; and

4. Granting the Debtor such other and further relief as this Court deems just and proper.

On January 22, 1997, I granted the Extension and Suspension Motions. On January 29, 1997, counsel to the Debtor wrote a letter to counsel for the Committee to inform him of the orders granting those motions. He also informed counsel that he would be filing an amended objection to claims by February 28, 1997.

On February 28, 1997, the Debtor filed "Debtor's First Amended Omnibus Objection to Claims Pursuant to 11 U.S.C. § 502 and Fed.R.Bankr.P. 3007" (the "Amended Objection") in which he represented that the Objection "shall amend and supersede [the Omnibus Objection]. On page 2, the Debtor referenced the Suspension Order without explanation. The Court scheduled the Objection for hearing on April 21, 1997 with an objection deadline of April 14, 1997. On March 3, 1997, the Debtor filed a Certificate of Service which indicated that on that date the Debtor served the Objection on parties entitled to notice. On March 6, 1997, the Debtor filed a Certificate of Service which indicated that on that date the Debtor served the Court-generated Notice of Hearing on parties entitled to notice.

Before the hearing, counsel to the Committee contacted counsel to the Debtor to explain that some confusion existed as to the effect of the Suspension Order on the Objection.

At the hearing on April 21, 1997, the Debtor reminded the Court that it had entered the Suspension Order. Debtor's counsel

---

1. In paragraph 5 of the Suspension Motion the Debtor stated the following:

   Accordingly, the Debtor, in filing the Objection with this Court merely to preserve the status quo, has not served the Objection on claimants. The Debtor proposed that neither a hearing nor a related objection deadline be established with respect to the Objection until litigation before this Court on the Confirmation Order is concluded. Suspension Motion, p. 2–3.

stated that "there may be some confusion in the sense that there is this order granting the stay and there was a notice and response deadline and hearing set for the objection." I replied that I would enter an order that "the stay previously granted does not apply to these claims objections." I also entered the Order which sustained the Debtors objection as to the claims of Adamar of New Jersey, Inc. ("Adamar"), GNOC Corp. ("GNOC"), and Bally's Park Place, Inc. ("Bally's")(collectively the "Creditors"). Oddly, counsel to the Committee did not attend the hearing.

Both before the hearing and after, counsel to the Committee and counsel to the Debtor exchanged conversations and correspondence regarding the Creditors' confusion with respect to whether the Suspension Order remained in place.

On June 18 and August 6, 1997, the Creditors filed motions to reconsider the Orders. Essentially, the Creditors state that although they were served with the Amended Objection and the Notice of Hearing, they failed to respond based upon their belief that the Suspension Order remained in effect.

In his objection to the motions to reconsider, the Debtor disputes that the Creditors were confused by the Suspension Order because they were not served with the Suspension Order or the underlying motion. Further, he argues that there could not have been any confusion because the Amended Objection "referred to the Court's prior orders on the Motion to Extend and on the Extension Motion and, thus, should have made it clear to [the Creditors] that the Amended Objection was not subject to the earlier Suspension Motion or the related order of this Court." The Debtor also points to my findings at the hearing that the Suspension Order was not applicable. Moreover, the Debtor argues that even if there were confusion, that in and of itself is insufficient cause to warrant reconsideration.

The Committee has filed pleadings supporting the reconsideration motions and to apprize the Court of its role in the above-described proceedings. The Committee contends that the events described above created sufficient confusion to warrant reconsideration of the Order. The Committee points out that the Suspension Order requested that the claims objection process be suspended until a further order of the Court. The Notice of Hearing was prohibited by the Suspension order and prior to the hearing in April, no order issued indicating that the Suspension order was vacated. As to the Debtor's argument that the Suspension Order applied to the Omnibus Objection and not the Amended Objection, the Committee states that the Suspension Order suspended all claim proceedings.

I held a hearing on the reconsideration motions at which time counsel reiterated their positions. Thereafter, I gave the parties the opportunity to file memoranda on the matter.

## III.   *Position of the Parties*

In his memorandum, the Debtor asks the Court to consider applying one of two standards when considering whether to grant reconsideration. The first requires one of the following findings:

1. the Court has patently misunderstood a party;

2. the court has made a decision outside the adversarial issues presented by the parties;

3. the court has made an error not of reasoning but of apprehension; or

4. there is a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Above The Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983).

The second standard would involve an application of Rule 60(b) which would allow for relief only upon a showing of the following:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b), (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed

or otherwise vacated, or it is no longer equitable that the judgment should have any prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b) (applied to bankruptcy proceedings through Fed.R.Bankr.P. 7024(b)).

The Debtor argues that under either standard, "confusion" on the part of the creditors does not warrant reconsideration. Further, the Debtor contends that even if the Court were to grant reconsideration, the Court should deny the claims as they are void as against the public policy of Massachusetts.

In their memoranda, the Creditors argue that the unique procedural posture of the claims procedure and the ensuing confusion warrant reconsideration. Further, they argue that the underlying debts should not be disallowed as against public policy.

### IV. *Analysis*

Based upon the forgoing, I am asked to first decide whether reconsideration of the Order is warranted. If the answer is yes, I must then consider whether the underlying claims are allowable.

### A. Whether Reconsideration is Appropriate

11 U.S.C. § 502(j) states, in part, that a "claim that has been allowed or disallowed may be reconsidered for cause." Fed. R.Bankr.P. 3008 provides, in part, that a "party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." The question becomes by what standard does this Court determine whether cause has been shown.

Many courts have held that although there is no deadline for filing a motion for reconsideration under § 502, if the motion is filed within 10 days of the order, it should be decided pursuant to the standards under Fed.R.Bank.P. 9023. *Abraham v. Aguilar (In re Aguilar)*, 861 F.2d 873 (5ᵗʰ Cir.1988); *Tandy Credit Corp. v. Martinez (In re Martinez)*, 179 B.R. 90 (Bankr.N.D.Ill.1994). *But see In re Farley Inc.*, 211 B.R. 889, 892 (Bankr.N.D.Ill.1997) (treating motion for re-

consideration filed after 10 days under Rule 9023); *In re Excello Press, Inc.*, 83 B.R. 539, 541 (Bankr.N.D.Ill.1988) (Rule 60 and not 59 applies to reconsideration of claims). That rule provides that "Rule 59 F.R.Civ.P. applied to cases under the Code, except as provided in Rule 3008." The applicable portion of Rule 59 of the Fed.R.Civ.P. provides as follows:

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues ... (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States ...

Fed.R.Civ.P. 59(a).

Likewise, courts have held that if the motion for reconsideration is filed after 10 days of the order then the motion must be decided under Fed.R.Bankr.P. 9024. *In re FERCO Fabricators, Inc.*, 153 B.R. 40 (Bankr. E.D.Mo.1993); *In re Wash. County Broadcasting, Inc.*, 39 B.R. 77 (Bankr.D.Me.1984). *But see United States v. Motor Freight Exp. (In re Motor Freight Express)*, 91 B.R. 705 (Bankr.E.D.Pa.1988) ("We believe that B. Rule 9023 applies generally to motions to reconsider claims, and that the only effect of the language added in B. Rule 9023 is to eliminate the 10–day limitation period for serving such a motion included therein."). That rule provides in part that "Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), ..." Fed. R.Bankr.P. 9024. Fed.R.Civ.P. 60(b) provides, in part, that on "motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reasons justifying relief from the operation of the judgment."

In a recent case, the court applied a modified Rule 60(b) standard. *In re Cassell*, 206

B.R. 853 (Bankr.W.D.Va.1997). The court explained as follows:

> The 'cause' standard of § 502(j) is not identical to the more stringent 'excusable neglect' standard of Fed.R.Civ.P. 60(b) . . . Nevertheless, the factors considered in an excusable neglect analysis 'are likely applicable to a cause analysis.' . . . Therefore, this Court will look to the considerations elucidated in *Resources Reclamation* for guidance in determining whether the 'equities of the case' warrant a finding of cause. Also important is whether a distribution has occurred . . . Finally, the District Court has earmarked certain factors as being especially relevant to an analysis under § 502(j), to wit, (1) possible prejudice to the Debtor; (2) Shawsville's explanation for its delay in contesting the Trustee's objection to claim, and (3) possible prejudice to Shawsville absent reconsideration.

*Id.* at 855.

■ I find that by applying even the strictest standard, Fed.R.Civ.P. 60(b), reconsideration is warranted. I will start by applying Fed.R.Civ.P. 60(b)(1) and decide whether the Creditors' failure to respond to the Amended Objection was the result of excusable neglect.

The Supreme Court has cited the following five factors with approval in determining whether excusable neglect is present: (1) danger of prejudice to the debtor; (2) the length of delay and it potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; (4) whether the movant acted in good faith; and (5) whether the clients should be penalized for the mistakes of their counsel. *Pioneer, Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993). The Court further cautioned that "we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the parties omission". *Id.*

I will first look at the relevant circumstances surrounding the Creditors' failure to respond to the Amended Objection. The Creditors have been active members of the Committee during the five years of this case. They timely filed proofs of claim. When the Debtor filed the Suspension Motion, the counsel to the Committee consulted with members of the Committee before giving the Committee's consent. While the Debtor appears to argue that further evidence is needed to determine if this claim is true, I accept the representations of counsel to the Committee and the Creditors' representations that they knew of the Suspension Motion, consented to the entry of an order allowing it, and received a copy of the order allowing it.

While I understand that the Suspension Motion referenced the First Objection, it also requested that I not conduct further proceedings with respect to the Debtor's objection to claims until the issues surrounding the entry of order of confirmation were resolved. Therefore, as they explained in the Reconsideration Motions, after I allowed the Suspension Order, it was reasonable to expect that I would take no further action with respect to the Debtor's objection to proofs of claims until the confirmation order matter had been resolved.

A month after the Suspension Order entered, the Debtor filed the Amended Objection which was served on the Creditors. In the Amended Objection, the Debtor stated that the Amended Objection superceded the First Objection. Although he referenced Suspension Order, he did not explain that he understood that it was no longer in effect. Shortly thereafter the Debtor served the Notice of Hearing on the Creditors.

The Debtor contends that receipt of the Amended Objection and the Notice of Hearing should have sufficiently alerted the Creditors that the objections to claims proceedings were going forward and that it was unreasonable of them to expect an order declaring the Suspension order was no longer in effect. The Creditors, however, did not ignore the pleadings. Instead, they contacted counsel to the Committee. It appears that the confusion arose when counsel to the Committee began to act as an intermediary. While I do not have testimony as to the content of the conversations, from the plead-

ings filed and the correspondence exchanged, it appears that the Creditors relied on the Committee to resolve the matter. I also recognize that at least one unsecured creditor who was a member of the Committee did not rely on the Suspension Order and was able to respond in a timely fashion to the Amended Objection. The fact that three creditors who were actively involved in the case for five years failed to respond indicates to me that their neglect was excusable.

Turning to the specific factors enumerated by the Supreme Court in *Pioneer*, I first find that there would be no prejudice to the Debtor in reviewing the Creditors' claims. The confirmation order entered well after filing the above-described pleadings and as of the date of the filing of the pleadings, no distribution had taken place. Furthermore, the Debtor has been under the protection of the Bankruptcy Code for five years with the knowledge of these timely filed claims.

The Debtor contends, however, that reconsideration will greatly prejudice other creditors by causing additional administrative expense in litigating the claims of the Creditors and by diverting money away from creditors who adequately defended their claims. I disagree. The Creditors' claims are being resolved by this decision. Further, while it is true that other creditors would receive a greater distribution were it not for these claims, they have not filed any pleadings on their own behalf and in fact, the Committee supports reconsideration. Moreover, there was no distribution at the time of the filing of the motions for reconsideration. Lastly, as was pointed out by the court in *Resources Reclamation,*

> Where no dividends have been paid, the mere fact that allowance of a claim would dilute dividends which would otherwise be paid is not the type of injury that should result in disallowance of the claim ... '[if reconsideration is not allowed] other creditors will receive a windfall to which they are not entitled on the merits. If [reconsideration is allowed], the Bank will receive no more than its fair and proper share pari passu with the other unsecured creditors.'

*In re Resources Reclamation Corp. Of America,* 34 B.R. 771, 773 (9th Cir. BAP 1983) (citing *In re Gibraltor Amusements, Ltd.,* 315 F.2d 210 (2nd Cir.1963)).

Although the Debtor argues that there was no reason for the lengthy delay in filing the Motions for Reconsideration, I disagree. It appears from the pleadings that the delay arose from the Creditors understanding that the matter could be resolved with correspondence between the Debtor's counsel and counsel to the Creditors' Committee. It appears that the Debtor was aware of the Creditors' dissatisfaction with the Order shortly after the Order was entered.

The last factor is whether the Creditors acted in good faith.[2] The Debtor claims that the Creditors did not respond to the Amended Objection as a result of a "conscious, deliberate, and calculated decision ..." "Debtor's Reply Memorandum in Response to Motions for Reconsideration Of Order Allowing Debtor's Amended Omnibus Objections to Claims", p. 3. In support, the Debtor references the affidavit of a former associate who recounts her conversations with counsel to the Committee. I find that the affidavit does not warrant a conclusion of a conscious, deliberate and calculated decision and further, the actions of Committee counsel cannot be attributed to the Creditors whose interest in the claims proceeding said counsel was not representing. I can find no reason why creditors who have remained active in a case for five years would suddenly forgo their right to payment.

Contrary to the Debtor's assertion and based upon the pleadings, I find that the Creditors did act in good faith. They mistakenly relied on the Suspension Order and the misguided offer of assistance from Committee counsel. Once they realized that the matter was not going to be resolved as between the Debtor and the Committee, they filed the motions.

I conclude that even under the more stringent test of Rule 60(b), reconsideration of the Creditors claims is warranted given the unique set of facts in this case. Therefore, I

---

**2.** In the Supreme Court test, the last factor is actually whether clients should be punished for attorney mistakes. That is not an issue in this case.

will now turn to the merits of the underlying claims.

### B. The Merits of the Claims

The Creditors' claims arise out of default judgments which the Creditors obtained in New Jersey based upon the Debtor's gambling debts incurred in that state. Adamar's claim exceeds $110,000 based upon the advances it gave to the Debtor on his personal line of credit. Adamar obtained a default judgment against the Debtor in that amount on October 25, 1991. Bally's obtained a default judgment against the Debtor in July of 1991 in an amount that exceeds $27,000 and timely filed a proof of claim for the same amount. Likewise, GNOC obtained a default judgment against the Debtor in July of 1991 in an amount which exceeds $113,000 for which it timely filed a proof of claim.

In the Amended Objection, the Debtor argued that the Creditors' claims should be overruled on the grounds that gambling debts should not be enforced as they are void as against public policy. The Debtor incurred the debts in New Jersey. He is a Massachusetts resident. The Debtor contends that Massachusetts law should govern the validity of the claim and since Massachusetts considers such debts void as against public policy, his objection should be sustained citing *Connecticut Nat'l Bank of Hartford v. Kommit*, 31 MassApp.Ct. 348, 577 N.E.2d 639 (1991). For guidance on whether this Court should allow claims which would be void in Massachusetts, the Debtor directs the Court to *In re Smith*, 66 B.R. 58 (Bankr.D.Md.1986), *aff'd*, 77 B.R. 33 (D.Md. 1987).

The Creditors contend that the enforceability of their claims does not implicate Massachusetts public policy, rather, the issue is solely one of enforcing the Full Faith and Credit clause of the United States Constitution. U.S. Const., Art. IV, § 1. As such, the only question for me to decide is whether there was in personam jurisdiction over the Debtor in New Jersey and whether the Debtor had sufficient notice of those proceedings. *San Juan Hotel Corp. v. Greenberg*, 502 F.Supp. 34 (E.D.N.Y.), *aff'd*, 646 F.2d 562

(1980), *cert. denied* 450 U.S. 1043, 101 S.Ct. 1762, 68 L.Ed.2d 241 (1981).

In response, the Debtor claims that the Creditors' arguments fail to factor in the application of the judgments to the claims allowance procedure. "This extra step that is present in a bankruptcy case distinguishes the Movant's cases from the present situation and permits the bankruptcy court to look behind a default judgment and decide the case on the merits." "Debtor's Reply Memorandum in Response to Motions for Reconsideration of Order Allowing Debtor's Amended Omnibus Objection to Claims", p. 4. For support, the Debtor cites to *Kohn v. Leavitt–Berner Tanning Corp.*, 157 B.R. 523 (N.D.N.Y.1993).

The Debtor further argues that the Creditors' default judgments are not entitled to collateral estoppel or *res judicata* because there is a lack of identity between the parties, citing *In re Sanborn, Inc.*, 181 B.R. 683 n. 15 (Bankr.D.Mass.1995) and *In re Nevada Natural, Inc.*, 92 B.R. 934 (Bankr.N.D.Okla. 1988). The Debtor finally argues that the Court should follow the better reasoned decision of *Kommit*.

I will start by reviewing the applicable statutory provision. 11 U.S.C. 502(b)(1) provides as follows:

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition and shall allow such claim in such amount except to the extent that—
>
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

The Debtor urges the Court to consider the case of *In re Smith*, 66 B.R. 58 (Bankr. D.Md.1986) in support of its objection to the Creditors' claims. In that case the court described the issue before it as "whether a defense grounded upon the public policy of the forum in which the bankruptcy court sits

was intended by Congress to be within the term 'applicable law' " *Id.*[3]

The court began its discussion with the following statement:

> The instant case involves an unsecured claim. The court believes without hesitation that had the debt incurred by the debtor been reduced to judgment in a New Jersey court, 28 U.S.C. § 1738 would require full faith and credit be given to such a judgment. This is because of the common law principle that once litigation is pursued to judgment, the judgment shall be conclusive of the rights of the parties in every other court as in the court where the judgment was rendered ... The Supreme Court has held in numerous cases that credit must be given to the judgment of another state, although the form would not be required to entertain the suit on which the judgment was founded.

*Smith,* 66 B.R. at 59 (citations omitted).

The court then went on to conclude that there was nothing in the prevailing public policy of New York that would serve as a bar to the casino's claim. Lastly, the court stated the following:

> Even were the Maryland Court of Appeals to deny enforcement in Maryland courts of obligations such as the one under consideration, in the case at hand the claim is to be judged under the one under consideration, in the case at hand the claim is to be judged under the equitable principles of the Bankruptcy Code ... The phrase 'applicable law' in section 502(b) deals with the law of the place of the making of the contract, not of the forum, unless the parties indicate otherwise. The House Report, quoted in footnote 1, explains this in describing such applicable defenses as usury, unconscionability, and failure of consideration. These are defenses of dealing with the making of the contract. Such defenses bearing upon the execution, interpretation, and validity of the contract depend upon the place the contract was

made, unless the parties indicate otherwise ...

> The court concludes that the public policy of the forum does not provide a basis for denying claims based on contracts ancillary to gambling activities valid where executed.

*Smith,* 66 B.R. at 61.

The Debtor's use of this case is curious. After having read it in full, I find that it supports the Creditors' argument that I should give full faith and credit to their New Jersey judgments.

The second applicable statutory provision is 28 U.S.C. § 1738. That section provides, in part, as follows:

> The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.[4]

28 U.S.C. § 1738.

■ Under the statute, I must give the New Jersey judgments the same preclusive effect in this Court that New Jersey would provide. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331–32, 84 L.Ed.2d 274 (1985). If New Jersey would give the judgment preclusive effect, I must inquire whether any statute repeals or creates an exception to the full faith and credit statute. *Id.* at 381, 105 S.Ct. at 1332 (citing *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 468, 102 S.Ct. 1883, 1890–91, 72 L.Ed.2d 262 (1982)).

■ Under New Jersey law, a judgment will not be given full faith and credit if the rendering court lacked in personam jurisdic-

---

3. In *Smith,* the debtor received from the casino an advance of $15,000 in chips after paying for the same with three checks. The checks were not honored. *Smith,* 66 B.R. at 58.

4. The statute applies to Bankruptcy Courts. *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2 nd Cir. 1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988).

tion, subject matter jurisdiction or failed to provide adequate notice and an opportunity to be heard. *City of Philadelphia v. Stadler,* 164 N.J.Super. 281, 286, 395 A.2d 1300 (1978), *aff'd, o.b.* 173 N.J.Super. 235, 413 A.2d 996, *certif. denied,* 85 N.J. 465, 427 A.2d 563 (1980), *cert. denied,* 450 U.S. 997, 101 S.Ct. 1702, 68 L.Ed.2d 198 (1981). The Debtor has not alleged any of these defenses.

■ Under New Jersey law, there are "three elements to the doctrine of *res judicata:* the judgment relied upon must be valid, final and on the merits; the parties in the two actions must be either identical or in privity with one another; and the claims must grow out of the same transaction or occurrence". *Olds v. Donnelly,* 291 N.J.Super. 222, 232, 677 A.2d 238, 243 (1996), *certif. granted* 146 N.J. 565, 683 A.2d 1161 (1996), *aff'd,* 150 N.J. 424, 696 A.2d 633 (1997) (citing *Watkins v. Resorts Int'l Hotel & Casino,* 124 N.J. 398, 412–13, 591 A.2d 592 (1991)).

■ The first element is met as New Jersey applies *res judicata* to default judgments. *Evangel Baptist Church v. Chambers,* 96 N.J.Super. 367, 370–71, 233 A.2d 82 (Ch.Div.1967). The Debtor appears to argue that the Creditors' judgments should not be given full faith and credit on the grounds that because the claims are subject to another layer of review, the claims allowance procedure in bankruptcy, I should look behind the default judgments. For support, the Debtor cited to *Kohn v. Leavitt–Berner Tanning Corp.,* 157 B.R. 523 (N.D.N.Y.1993).

In that case, the district court reviewed the decision of the bankruptcy court which had held that a state court default judgment for rent due would not be given full faith and credit for the entire amount, rather, it would be limited by the formula for rent claims under 11 U.S.C. 502(b)(6). The appellant argued, *inter alia,* that the bankruptcy judge erred in applying § 502(b)(6) to the state court judgment.

The district court disagreed. The court recognized that 28 U.S.C. § 1738 requires that federal courts give preclusive effect to state court judgment and that the statute applies to bankruptcy courts. *Id.* at 526. The court decided however, that an application of § 502 would not be inconsistent with 28 U.S.C. § 1738 as follows:

> Section 502(b) requires the bankruptcy court to undertake a two-part analysis. First the court must "determine the amount of [a creditor's] claim as of the date of the filing of the petition ..." In a case such as the one at bar, this means accepting as non-reviewable the amount of the claim as determined by the state court. This figure then forms the basis for the second part of the analysis, wherein the court determines how much of the claim should be allowed. Applying the principles of equity inherent in the code, the court looks behind the judgment to ascertain the relationship between the parties. When the parties stand as lessor and lessee, as in the case at bar, § 502(b)(6) applies. This subsection provides a formula to which the previously determined judgment figure is applied, resulting in a second figure—the allowable portion of the original judgment. This second figure represents Congress' view of what is equitable between a lessor and lessee in bankruptcy.

*Id.* (footnote omitted).

Notwithstanding the fact that the court in *Kohn* did not explain why principles of equity inherent in the Bankruptcy Code would serve to overrule a specific statutory mandate,[5] this Court finds that the circumstances present in *Kohn* are not present here and that there is no reason to follow the case. That is, *Kohn* did not apply 28 U.S.C. § 1738 to the entire amount of the state court judgment because there was a Bankruptcy Code provision which would cap such a claim. In this case, there is no Bankruptcy Code section which would so limit the Creditors' claims. Therefore, even if I were inclined to look behind the judgments, there is no reason to do so.

---

5. "It is true the bankruptcy courts sit as courts of equity. However, a fundamental principle of equity jurisprudence is that 'equity follows the law.'" Courts of equity are bound to follow express statutory commands to the same extent as are courts of law. Bankruptcy courts are no more entitled to ignore the law than are other courts of equity. *Shoreline Concrete Co., Inc. v. U.S. (In re Shoreline Concrete, Co., Inc.,),* 831 F.2d 903, 905 (9 th Cir .1989).

The second element is whether the parties are the same. The Debtor argues that they are not because an individual debtor in possession is an entity different than that person was pre-petition. For support he cites to *In re Sanborn, Inc.* 181 B.R. 683, 691 n. 15 (Bankr.D.Mass.1995), *Societa Internazionale Turismo v. Barr (In re Lockwood)*, 14 B.R. 374 (Bankr.E.D.N.Y.1981) and *In re Nevada Natural Inc.*, 92 B.R. 934 (Bankr.N.D.Okla. 1988) for the proposition that *res judicata* should not be applied to the Creditors' claims.

In *Sanborn*, Judge Boroff concluded in a footnote that a trustee or debtor in possession is not saddled with the unclean hands of a pre-petition debtor. *In re Sanborn, Inc.*, 181 B.R. 683, 691 n. 15 (Bankr.D.Mass.1995). I am unconvinced that Judge Boroff's conclusion can be stretched to say that a pre-petition debtor and a debtor in possession are not in privity for the purposes of *res judicata*.

In *Lockwood*, the debtors contested a creditor's motion for relief from stay on the grounds that the creditor did not hold a claim against them. *Societa Internazionale Turismo v. Barr (In re Lockwood)*, 14 B.R. 374 (Bankr.E.D.N.Y.1981). The debtors contended that the creditor obtained a default judgment against them as a result of their attorney's negligence and when the claim which the creditor held was against their state court co-defendant whose debts they had not guaranteed. The creditor relied on 28 U.S.C. § 1738. The court ruled that a bankruptcy court in the Second Circuit may use its equitable powers to inquire into the validity of a claim but only "for the purpose of showing that it was obtained by collusion of the parties or is founded upon no real debt." 14 B.R. at 378 (citing *Margolis v. Nazareth Fair Grounds & Farmers Market Inc.*, 249 F.2d 221, 224 (2d Cir.1957)). Because the debtors were able to demonstrate that their counsel in the state court proceeding was incompetent and that the claim was not founded on a real debt, the court went behind the state court judgment and concluded that the movant did not hold a claim against the debtors. *Id.* at 380. In this case, however, the Debtor has not offered

any similar reasons to make inquiries into the state court judgments.

In *Nevada Natural*, the trustee filed an adversary proceeding to determine the amounts of the claims of creditors who held state court default judgments. *In re Nevada Natural Inc.*, 92 B.R. 934 (Bankr.N.D.Okla. 1988). The claimants moved to dismiss on the grounds that the doctrines of collateral estoppel and *res judicata* prevented the trustee's complaint. The court held that collateral estoppel did not apply because there had been no actual litigation. The court held that *res judicata* did not apply because the trustee was not a party to the state court litigation and was not in privity with the debtor because as trustee he represents all of the creditors who were not represented in the state court. *Id.* at 936–37. The court did not discuss 28 U.S.C. § 1738.

In this case, however, it is the Debtor and not a trustee who is raising the issue of *res judicata*. The two cases which this Court has found which address the exact issue of whether *res judicata* can be avoided on the grounds that a debtor in possession is an entity different than a pre-petition debtor conclude that such a distinction is meritless. *In re Wizard Software, Inc.*, 185 B.R. 512, 519 n. 12 (Bankr.E.D.Va.1995) (declining to deny *res judicata* effect to default judgment on grounds that debtor was now debtor in possession; "claim asserted here, however, is not a claim against the debtor in possession as such; it is a claim against the debtor which, if allowed, is entitled to be paid as part of the plan of reorganization."); *Hays v. Cummins (In re Cummins)*, 174 B.R. 1005, 1009 (Bankr.W.D.Ark.1994) ("While for Chapter 11 bankruptcy purposes there exists a distinction between an individual in bankruptcy and the "debtor-in-possession," there is no good faith basis for arguing that the distinction makes a difference for res judicata purposes."). Other courts have held that *res judicata* applies to a debtor in possession without discussing the issue. *In re A–1 24 Hour Towing, Inc.*, 33 B.R. 281, 284 (Bankr. D.Nev.1983). I agree with the court in *Cummins* and conclude that for the purposes of *res judicata* an individual debtor in posses-

sion is the same entity as the pre-petition debtor.

As to the third element, the claims in New Jersey are identical to the one being presented here. As I have explained, I find no legislative or policy reason to preclude application of the full faith and credit statute. Therefore, I find no reason why I should not apply the full faith and credit statute and overrule the Debtor's objection to the Creditors' claims.

I note that this holding conforms with a holding of a Massachusetts appellate case whose facts are substantially similar to this case. *Admar of New Jersey, Inc. v. Matellian*, 1996 Mass.App.Div. 79, 1996 WL 224484 (1996). In that case, the defendant, a Massachusetts resident, applied for and received funds from a casino in New Jersey. The court ruled the following:

> Absent Mattellian's successful challenge to subject matter and personal jurisdiction, there is no Constitutional basis by which a Massachusetts court can go behind a judgment rendered in the court of another state upon a cause of action valid in the originating state ... Moreover, the policy considerations expressed in c. 137, § 3 do not entitle the courts of Massachusetts, on that basis, to refuse enforcement of the New Jersey judgment.

*Id.* (citing *McDade v. Moynihan*, 330 Mass. 437, 442, 115 N.E.2d 372 (1953) ("The Constitution of the United States can not be trimmed to suit the differing views of policy entertained in differing states.")).

The Debtor urged me to follow a Massachusetts case which discussed the public policy arguments against enforcing a gambling debt. *See Connecticut Nat'l Bank of Hartford v. Kommit*, 31 MassApp.Ct. 348, 577 N.E.2d 639 (1991). In *Kommit*, a Massachusetts resident obtained a cash advance on his credit card to gamble in New Jersey. The bank with whom the credit card held a credit agreement sued Kommit in Massachusetts for payment of the funds. Kommit argued that the debt was void as against Massachusetts public policy. The court then engaged in a lengthy discussion regarding whether to apply the laws of Massachusetts, Connecticut or New Jersey. The court concluded that the law of Connecticut should apply as that was what the credit agreement provided. The court then ruled that under Connecticut law summary judgment was inappropriate and reversed the lower court. While this case repeats that gambling debts are void as against public policy in Massachusetts it does not address the issue before this Court: the effect of the New Jersey default judgments in a claims proceeding in a Bankruptcy Court in Massachusetts. There is not simply a technical distinction between *Kommit* and *Admar*. The former case does not touch on the issues before me and the latter does.

In the end, however, I need not follow either *Kommit* or *Admar* as it is not the law of Massachusetts that is applicable. Pursuant to the above-cited Supreme Court decisions, I must apply the laws of New Jersey to decide whether to give the default judgments full faith and credit. Because I conclude that New Jersey would give the default judgments full faith and credit and because there are no other grounds which suggest I do otherwise, I will enter an order vacating the Order as to the Creditors and overrule the Amended Objection as to those three claims.