Barbara J. HANN, Debtor.

Barbara J. Hann, Plaintiff–Appellee,

v.

Educational Credit Management Corporation, Defendant–Appellant.

BAP No. NH 11–084.
Bankruptcy No. 04–13901–JMD.
Adversary No. 11–01046–JBH.

United States Bankruptcy Appellate Panel of the First Circuit.

Aug. 7, 2012.

Christopher J. Pyles, Esq., and Adam C. Trampe, Esq., on brief for Defendant–Appellant.

Richard D. Gaudreau, Esq., Salem, NH, on brief for Plaintiff–Appellee.

Before HILLMAN, FEENEY, and HOFFMAN, United States Bankruptcy Appellate Panel Judges.

Hoffman, Bankruptcy Judge.

Educational Credit Management Corporation ("ECMC") appeals from the following determinations of the United States Bankruptcy Court for the District of New Hampshire: (1) the October 20, 2011 order granting the motion of Barbara J. Hann ("Hann") for summary judgment against ECMC based on its post-discharge efforts to collect a fully paid student loan obligation; (2) the October 20, 2011 order denying ECMC's cross-motion for summary judgment; and (3) the November 18, 2011 Final Judgment imposing sanctions on ECMC in the amount of $9,134.72, pursuant to Bankruptcy Code § 105 [1] (collectively "the Orders"). For the reasons discussed below, the Orders are **AFFIRMED**.

## BACKGROUND

Hann filed a voluntary petition for chapter 13 bankruptcy relief on November 2, 2004.[2] On Schedule F accompanying her petition, she listed National Asset Management as the holder of a disputed, contingent claim in the approximate amount of $55,000.00. She described the consideration for the claim as "Student Loans

---

**1.** Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 37.

**2.** She had previously filed a chapter 7 case and received a discharge in 1995.

1990–1993 Law School." In February 2005, ECMC filed a proof of unsecured claim in the approximate amount of $55,000.00 ("the Claim"), based on Hann's allegedly unpaid student loans. ECMC attached three $7,500.00 Stafford Loan promissory notes ("the Stafford Notes") as exhibits to the Claim, which notes were executed by Hann on May 10,1990, April 30, 1991, and May 20, 1992, respectively.[3] ECMC also attached to the Claim its calculation of Hann's indebtedness, which purported to demonstrate that Hann owed a principal balance of approximately $31,000.00 on the Stafford Notes, plus collection costs of approximately $10,000.00, and unpaid interest of approximately $12,000.00.

In November 2005, Hann filed and served on ECMC an objection to the Claim ("the Claim Objection"), together with a proposed order and notice of hearing indicating a hearing date of January 10, 2006.[4] In the Claim Objection, Hann asserted both that ECMC failed to adequately document the Claim, and that, in any event, she had already paid more than what was due under the Stafford Notes. Accordingly, in her prayer for relief, she asked the court to disallow the Claim, or, to allow it in an amount proved by ECMC's payment history records.

ECMC neither filed a response to the Claim Objection, nor attended the January 10, 2006 hearing. Despite the absence of a response, the bankruptcy court held an evidentiary hearing. Hann, who was represented by counsel at the hearing, testified at length regarding her payment history and her efforts to obtain an account reconciliation from ECMC in 1998 and 1999. She testified that between November 1998 and June 1999, she wrote to ECMC six times, informing it that she "thought [its] numbers were wrong." She testified further that ECMC ignored her communications, that in September 1999, it garnished her federal tax refund, and that her subsequent efforts to resolve the dispute regarding the amount of the indebtedness were equally unsuccessful. In order to facilitate the disposition of the Claim Objection, the court asked Hann to submit an affidavit. She, in turn, offered to explain her payment history, "loan by loan." In the context of this exchange, the court made the observation which, at least in part, fuels this dispute: ". . . to the extent there's anything out there, it's still excepted from discharge."

The affidavit which Hann subsequently furnished ("the 2006 Hann Affidavit") showed that from September 1990 to April 1993, she had borrowed a total of $84,089.00 in various student loans to fund law school tuition and related expenses. According to Hann, only $34,500.00 of that amount represented Stafford loans, which were originally obtained from Society Bank and later assigned to ECMC. In the 2006 Hann Affidavit, Hann chronicled her complicated student loan payment history. Significantly, she averred that on May 16, 1995 ("the May 1995 correspondence"), she received correspondence from Society Bank stating that the Stafford Notes had

---

**3.** The lender identified on each of the Stafford Notes is Ameritrust Company National Association. In the proceedings below, ECMC claimed that it received an assignment of the Stafford Notes from the United States Department of Education in February 2005, when the notes were allegedly in default. This representation conflicts with Hann's assertion in the bankruptcy court proceedings that the original holder was actually Society Bank. In any event, she has not challenged ECMC's assertion that it was the holder of the Stafford Notes.

**4.** ECMC concedes that it received the Claim Objection and the notice of hearing on the Claim Objection.

been paid. In the May 1995 correspondence, Society Bank enclosed one $7,500.00 Stafford Note marked "paid," and a lost note affidavit from Society indicating that another note in the amount of $15,000.00, although lost, had been "settled in full." [5] What emerges with clarity from the 2006 Hann Affidavit is her contention that she paid all of her student loans, including those arising from the Stafford Notes, in full prior to the commencement of her chapter 13 case.

On June 9, 2006, after due consideration, the bankruptcy court entered an order which provided, without explanation: "Debtor's [O]bjection to Claim [ ] 1 filed by ECMC is sustained. This [c]ourt allows the claim of ECMC in the amount of $0.00" ("the June 2006 Order"). [6] ECMC did not appeal the June 2006 Order.

On March 2, 2010, Hann received a discharge after completion of her confirmed chapter 13 plan ("the Plan"). [7] The discharge order specifically provided, in pertinent part:

> The chapter 13 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt is provided for by the chapter 13 plan or is disallowed by the court pursuant to [§ ] 502 of the Bankruptcy Code.

The discharge order further indicated that "[d]ebts for most student loans" are excepted from discharge. Shortly thereafter, on May 28, 2010, the court entered an order closing Hann's chapter 13 case.

On April 12, 2010, less than a month after the entry of the discharge order, ECMC wrote to Hann, advising her that it had received an assignment of three of her student loans, and that the loans were not discharged. The letter demanded that Hann establish a repayment schedule immediately. On April 22, 2010, Hann received another demand from ECMC. By letter of even date, Hann's counsel informed ECMC that Hann had completed her plan payments and had received her discharge, and requested ECMC to cease collection activity. In May 2010, ECMC wrote to Hann yet again, this time warning that her "prolonged refusal to establish a repayment schedule on [her] defaulted student loan(s) [could] not continue." In March 2011, Hann received notice from the Department of the Treasury that her social security payments had been applied to her student loan debt.

On February 8, 2011, Hann filed a motion to reopen her bankruptcy case, which the court granted the following day. Two months later, she filed a four-count adversary complaint against ECMC ("the Complaint").

In Count I of the Complaint, Hann sought injunctive relief, barring ECMC

---

5. It is unclear how or whether the lost note affidavit and the note marked "paid" relate to the three $7,500.00 Stafford Notes appended to Claim, which Hann claims to have paid in full. It seems likely that the lost note affidavit combined two of the Stafford Notes.

6. The Hon. Mark W. Vaughn presided over the January 10, 2006 hearing and issued the June 2006 Order. Upon Judge Vaughn's subsequent retirement, the main case was reassigned to the Hon. J. Michael Deasy. The Hon. James B. Haines, Jr., was assigned to the adversary proceeding.

7. The Plan was not included in the record, so it is impossible to confirm Hann's treatment of ECMC's debt. The bankruptcy court docket, however, reveals that the court confirmed the Plan on October 18, 2005, absent objection by ECMC. See Aja v. Emigrant Funding Corp. (In re Aja), 442 B.R. 857, 861 n. 7 (1st Cir. BAP 2011) (holding Panel may take judicial notice of the bankruptcy court proceedings).

from continuing collection efforts on the subject student loans; in Count II, she sought a declaratory judgment that the June 2006 Order precluded ECMC from collecting the Stafford Notes; in Count III, she requested a finding of contempt pursuant to § 105; and in Count IV, she sought a determination that ECMC violated the automatic stay, thereby causing her "emotional damages." [8] In her prayer for relief, she requested, *inter alia*, a finding that ECMC was in contempt of the June 2006 Order and sought an award of actual damages in the amount of $15,000.00, punitive damages, attorneys' fees, costs, and other appropriate relief.

In its answer, ECMC challenged the accuracy of the 2006 Hann Affidavit and denied that the June 2006 Order reflected or included a specific finding that Hann owed ECMC nothing. ECMC admitted that it continued to send Hann post-discharge collection letters, contending that the June 2006 Order did not discharge Hann's obligations under the Stafford Notes.

In September 2011, Hann filed a motion for summary judgment on the limited issue of liability ("Summary Judgment Motion"), in which she framed the underlying issue as follows: "[I]s ECMC entitled to continue to collect student loans after conclusion of her chapter 13 in which Judge Vaughn after an evidentiary hearing ruled that ECMC was owed $0.00." Answering her own question in the negative, she argued:

> [ ] To the extent ECMC seeks to now raise the possibility of a payment dispute in opposition to this motion, that ship has sailed ... The only issue for

the court here is whether Judge Vaughn's orders were dispositive, and entitled to collateral estoppel effect.

In her accompanying memorandum of law, Hann further argued that the Plan specifically provided that "unsecured claims would only be paid if they were 'allowed' claims," and that "ECMC's claim was not allowed as the amount owed was $0.00." She also raised the four elements of collateral estoppel articulated in *Keystone Shipping Co. v. New England Power Co.*, 109 F.3d 46, 51 (1st Cir.1997). While Hann did not address the application of all of those elements, she focused on the "actually litigated" requirement, maintaining that her presentation of "ample evidence" during the claims objection process satisfied that element.

ECMC filed an opposition to the Summary Judgment Motion and a cross-motion for summary judgment ("the Cross–Motion"), together with a supporting memorandum of law. In the Cross–Motion, ECMC asserted the position that dominates this appeal, namely, that "[c]hapter 13 disallowance does not extinguish a nondischargeable debt, and does not collaterally estop subsequent collection of the full amount." It also argued that the discharge order of March 2010 similarly failed to discharge Hann's student loan debt.

In its supporting memorandum, ECMC asserted that the bankruptcy court previously acknowledged the distinction between disallowance and discharge of a claim at the hearing on the Claim Objec-

---

8. In the prefatory language set forth in the Complaint, Hann represented, without specifying which order was violated, that the Complaint constituted:

> a petition for injunctive relief, declaratory judgment and other relief pursuant to [§ ] 105, and [§ ] 362. *See Bessette v. Avco Fin.*

*Servs., Inc.*, 230 F.3d 439 (1st Cir.2000) (action under [§ ] 105 for contempt for violation of the discharge injunction).

In her prayer for relief, however, she stated that she was seeking damages for ECMC's violation of the June 2006 Order.

tion, when it stated, "... to the extent there's anything out there, it's still excepted from discharge." Disallowance of a claim, ECMC argued, does not determine the amount owed on a pre-petition obligation, but merely deprives a claimant of payment through the plan. Under this argument, "student loan obligations survive disallowance and a general [c]hapter 13 discharge." ECMC also challenged Hann's collateral estoppel argument, contending that the issues were neither identical, nor "necessarily and actually litigated."

Hann responded with an opposition to the Cross–Motion, again pressing for the application of collateral estoppel. She noted that the proceedings on the Claim Objection were far from summary and that, therefore, the June 2006 Order merited preclusive effect. Additionally, she represented that the Plan called for payment of only allowed claims and fixed the amount of her student loan debt at zero.[9] She did not address, however, ECMC's "identity of issues" argument.

In its reply to Hann's opposition to the Cross–Motion, ECMC continued to emphasize the distinction between claims allowance and dischargeability by arguing:

> To just scratch the surface, the claims allowance process deals exclusively with the rights of [a] creditor against assets of a debtor['s] bankruptcy estate. By contrast, a dischargeability determination concerns whether a creditor may, after the entry of a bankruptcy discharge, continue to pursue the enforcement of its debt as a personal liability against the debtor.

(quoting *Gregory v. U.S. Dep't of Educ. (In re Gregory)*, 387 B.R. 182, 188 (Bankr. N.D.Ohio 2008)).

The bankruptcy court conducted a hearing on the Summary Judgment Motion and the Cross–Motion on October 20, 2011, at which Hann and ECMC appeared by counsel. Hann's counsel summarized her position as follows: "I believe the issue has been actually litigated. It isn't a discharge issue. It is an issue about whether zero was owed at the time of the proof of claim order." He rejected the notion that Hann was required to file a complaint seeking a determination of dischargeability arguing: "[w]hy would she file one when she believes she owes zero?" ECMC countered:

> [ ][T]he fundamental fact of the matter is that when [Hann] filed for a [c]hapter 13 proceeding and objected to the proof of claim she sought a disallowance of the claim. She did not seek discharge of her student loan debt.

> And as the cases show from *Cruz [v. Educ. Credit Mgmt. Corp. (In re Cruz)*, 277 B.R. 793 (Bankr.M.D.Ga.2000) ] and *Bell [v. Educ. Credit Mgmt. Corp. (In re Bell)*, 236 B.R. 426 (N.D.Ala.1999) ] and others, in a [c]hapter 13 proceeding, even where there is a finding on the claim, that as in Cruz for example, that the claim had been paid in full, that does not impact the underlying non-dischargeable debt. . . .

The court then inquired, "If there is a finding that nothing is owed, but the claim's not dischargeable, what's the practical import for the creditor?" ECMC's counsel replied:

> That under the [c]hapter 13 plan ... there is no repayment to the creditor. . . . But the creditor holding a non-dischargeable debt can then collect on that debt at the conclusion of the [c]hapter 13 plan.

9. Because the Plan was not included in the record on appeal, it is impossible to verify this assertion; nor is such verification necessary, as we are not relying on this representation in reaching our decision.

The court responded by noting that Judge Vaughn had undertaken "a fairly arduous examination and supplementation to determine whether or not this debtor was obligated to pay something under [the P]lan on account of student loan debt that wouldn't go away[.]" On three separate occasions, the bankruptcy judge asked ECMC's counsel if there was any money owed. Each time, his answer was unresponsive; ECMC's counsel was seemingly unable to identify or quantify a surviving obligation. Accordingly, the court announced it would grant the Summary Judgment Motion, stating:

[ ] I have asked counsel repeatedly to point to some portion of obligation that was not within Judge Vaughn's scrutiny at the time of the claims objection.

The creditor submitted a proof of claim. There was a duly-noted objection to claim. The [c]ourt found that the obligation on that claim, which was comprised of the student loan obligation, was zero. It was therefore treated as zero under the [P]lan. The debtor got a discharge of the claims that were treated under the plan.

*There has been nothing pointed to me that shows that there is a substance of a claim, an obligation owing, outside that which was scrutinized after an evidentiary hearing by Judge Vaughn, within his jurisdiction, in connection with the claims objection process.*

As a consequence, there's two things: One: it was paid 100 [percent] of zero under the [P]lan, and is therefore discharged. Or alternatively—alternatively, *the amorphous student loan obligation may remain undischarged in ECMC's mind in the amount that is collaterally estopped to be zero.*

As a consequence the [ ][C]ross–[M]otion . . . is denied. . . .
And the [S]ummary [J]udgment [M]otion is granted. . . .
I just can't countenance a process with a debtor having done—she did more than seek to have her debt discharged as undue hardship. She said, "Yeah, I—I've owed them money, and I've been obliged to pay it; but I paid it back. Just determine that, Judge." And he did.

(emphasis added).

Hann's counsel then represented that his client only sought a ruling that ECMC was barred from future collection of the alleged student loan debt, together with fees and costs incurred in connection with his efforts to obtain such a ruling. He further indicated that Hann waived her remaining claims.[10] The court concluded the hearing by granting Hann a period of fourteen days to file an affidavit of fees and costs, and ECMC another fourteen days thereafter to object.

On October 20, 2011, the bankruptcy court entered an order ("the October 2011 Order"), wherein it stated that it granted the Summary Judgment Motion on Counts I (for injunctive relief), II (for declaratory judgment), and III (for contempt under § 105). On the same day, the court entered a separate order denying the Cross–Motion. ECMC filed a timely notice of appeal from both orders.

Thereafter, Hann filed an affidavit of fees and costs, in which she requested an award in the aggregate amount of $9,134.72, for professional services and expenses. She further represented that such fees were "reasonable and necessary." ECMC challenged Hann's request for fees and costs, on the grounds that there was

10. We understand this waiver to amount to a waiver of Count IV, the only Count which Hann excluded from the Summary Judgment Motion.

no bankruptcy court "finding of contempt . . . , or even a hearing on any such claim." ECMC also contended that Hann had either waived or withdrawn her claim for fees and costs.

On November 18, 2011, without further hearing, the court entered a Final Judgment,[11] awarding Hann $9,134.72, the full amount requested, "as a remedial sanction for [ECMC's] violation of the Bankruptcy Code's discharge injunction." In the Final Judgment, the court elaborated as follows:

> Following my grant of summary judgment on October 20, 2011, the plaintiff waived all other claims and indicated that in addition to confirming that her obligation to the defendant had been determined to be satisfied and, in any event, discharged, she sought only an award of attorney's fees in consequence of the defendant's violation of the discharge injunction. Consistent with my direction, the plaintiff has filed an affidavit of fees and costs and the defendant has responded.
>
> I have reviewed [Hann's] affidavit of fees and costs and [ECMC's] response thereto. [ECMC] does not take issue with the reasonableness of the fees and costs sought, nor their relation to [Hann's] successful attempt to enforce compliance with the discharge injunction. Rather, [ECMC] contends that there has been no finding of a violation of [t]he discharge injunction, enforceable [through] this court's contempt powers under § 105.
>
> I reject [ECMC's] argument. I determined as a matter of law that [ECMC]

was aware of [Hann's] discharge and that, following the discharge, *it took actions seeking to enforce a discharged obligation (indeed, an obligation that had been finally determined to have nothing owing on it before the discharge even entered).*[12] On these critical points there is, and can be, no factual dispute.

(emphasis added).

ECMC subsequently amended its notice of appeal to include the Final Judgment, and identifies the following two issues in its appellate brief:

> (1) [ ] Absent express language discharging student loan debts, does an order sustaining a claim objection operate as a matter of law to also discharge the underlying nondischargeable debts?
>
> (2) Did the bankruptcy court err when it summarily issued contempt sanctions against ECMC for violating a discharge order without any contempt hearing and without findings on disputed issues of material fact relating to ECMC's knowledge, willfulness, and good faith?

### *JURISDICTION*

■ A bankruptcy appellate panel is "duty-bound" to determine its jurisdiction before proceeding to the merits, even if the litigants do not raise the issue. *George E. Bumpus, Jr. Constr. Co. v. Boylan (In re George E. Bumpus, Jr. Constr. Co.),* 226 B.R. 724, 725–26 (1st Cir. BAP 1998) (internal quotations and citation omitted). A panel "may hear appeals from final judgments, orders, and decrees [pursuant to 28

---

11. Although the Final Judgment indicates that the court granted summary judgment on Counts II and III, only, the omission of Count I appears to be a scrivener's error, as both the October 2011 Order and the transcript of the proceedings on the Summary Judgment Motion clearly indicate that the granting of summary judgment also encompassed Count I.

12. Although the court stressed ECMC's violation of the discharge injunction in the Final Judgment, the Final Judgment also included a determination that ECMC attempted to collect an obligation on which nothing was owed. This determination falls well within the scope of Count III and supports a finding of contempt, as discussed, *infra.*

U.S.C. § 158(a)(1) ], or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998) (internal quotations omitted).

■ The Panel has previously ruled that "an order granting summary judgment is a final order where no counts against any defendants remain." *Correia v. Deutsche Bank Nat'l Trust Co. (In re Correia)*, 452 B.R. 319, 322 (1st Cir. BAP 2011) (citation omitted). Conversely, partial summary judgments limited to the issue of liability "are by their terms interlocutory, ... and where assessment of damages or awarding of other relief remains to be resolved have never been considered to be final...." *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976) (internal quotations and citations omitted); *see also Vazquez Laboy v. Doral Mortg. Corp. (In re Vazquez Laboy)*, 647 F.3d 367, 372 (1st Cir.2011) (ruling that for judgment to be final, the issue of monetary liability must be resolved). Here, where the court granted summary judgment on Counts I, II and III, the remaining count has been waived, and the issue of damages resolved, the Orders are final. Accordingly, we have jurisdiction to hear this appeal.

### STANDARD OF REVIEW

■ A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See Lessard v. Wilton–Lyndeborough Coop. School Dist.*, 592 F.3d 267, 269 (1st Cir.2010). The Panel applies a *de novo* standard of review to bankruptcy court orders granting summary judgment. *Backlund v. Stanley–Snow (In re Stanley–Snow)*, 405 B.R. 11, 17 (1st Cir. BAP 2009).

### POSITIONS OF THE PARTIES

On appeal, ECMC argues that: (1) the disallowance of a student loan claim does not preclude later collection of the full amount of the subject debt; and (2) a sustained claim objection does not discharge student loan debts. Accordingly, ECMC maintains that it remained legally entitled to seek to collect the full amount of Hann's alleged student loan debt and, therefore, urges the Panel to reverse the Orders.

Hann, on the other hand, contends that: (1) the June 2006 Order means what it says—that ECMC is owed $0.00; (2) the 2006 Order precludes re-litigation of the amount of ECMC's claim under principles of collateral estoppel; and (3) the bankruptcy court properly enforced the June 2006 Order through a finding of contempt, pursuant to § 105. She asks the Panel to affirm the Orders.

### DISCUSSION

In both the summary judgment proceedings below and on appeal, ECMC attempts to frame the underlying issue in terms of dischargeability. Yet this appeal stems not from a dischargeability proceeding but, rather, from an objection to a proof of claim, and more specifically, from the June 2006 Order sustaining Hann's objection to ECMC's claim and allowing the claim in the amount of $0.00. Resolution of this appeal turns on the effect accorded that order and consequently, our analysis is governed by the standards applicable to summary judgment and the process for objecting to claims prescribed by the Bankruptcy Code.

### I. The Summary Judgment Standard

"In bankruptcy, summary judgment is governed in the first instance by Bankruptcy Rule 7056." *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 762 (1st

Cir.1994). "By its express terms, the rule incorporates into bankruptcy practice the standards of Rule 56 of the Federal Rules of Civil Procedure." [13] *Id.* (citations omitted). "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *Id.* at 763 (citing Fed.R.Civ.P. 56(c)). "As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver an absence of evidence to support the nonmoving party's case." *Id.* at 763 n. 1 (citation and internal quotations omitted). "The burden of production then shifts to the nonmovant, who, to avoid summary judgment, must establish the existence of at least one question of fact that is both genuine and material." *Id.* (citations and internal quotations omitted). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in the original).

## II. Section 502 and Disallowance of Claims

Section 502(a) provides that

[a] claim or interest, proof of which is filed under [§ ] 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a). The Bankruptcy Code defines a "claim" as a "right to payment," 11 U.S.C. § 101(5)(A), "usually referring to a right to payment recognized under state law." *Travelers Cas. and Sur. Co. of America v. Pac. Gas and Elec. Co.,* 549 U.S. 443, 451, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). The Bankruptcy Code defines the term "debt" as the "liability on a claim." 11 U.S.C. § 101(12). The reflexive definitions of "claim" and "debt" reveal "Congress' intent that the[ir] meanings ... be coextensive." *Pennsylvania Dept. of Pub. Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

■ "A proof of claim is deemed valid and is allowed unless objected to by an interested party." *In re Goldberg,* 297 B.R. 465, 466 (Bankr.W.D.N.C.2003) (citing § 502(a); Fed. R. Bankr.P. 3001(f)). Pursuant to Fed. R. Bankr.P. 3007(a), "[a]n objection to the allowance of a claim shall be in writing and filed." *See* Fed. R. Bankr.P. 3007(a). Section 502(b) provides that if such an objection is made, "the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount." 11 U.S.C. § 502(b).

■ Section 502(b) itemizes nine grounds upon which a claim may be disallowed. *See* 11 U.S.C. § 502(b). Section 502(b)(1) is particularly relevant here as it provides for the disallowance of a claim that is unenforceable under "applicable law." *See* 11 U.S.C. § 502(b)(1). Courts apply the standards articulated in § 502(b) if there is an objection to a proof of claim. Hon. Joan N. Feeney, *Bankruptcy Law*

---

**13.** Fed.R.Civ.P. 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court shall state on the record the reason for granting or denying the motion." Fed.R.Civ.P. 56(a).

*Manual* § 6:11 (5th ed. 2012). As observed by the court in *In re Dow Corning Corp.*, 215 B.R. 346, 354 (Bankr.E.D.Mich. 1997), the Supreme Court has long recognized that the process of claims allowance includes dual determinations of both validity and the amount of the claim. *See, e.g., Katchen v. Landy,* 382 U.S. 323, 329, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) ("This power to allow or to disallow claims includes 'full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based.' ") (citing *Lesser v. Gray,* 236 U.S. 70, 74, 35 S.Ct. 227, 59 L.Ed. 471 (1915)); *Vanston Bondholders Prot. Comm. v. Green,* 329 U.S. 156, 170, 67 S.Ct. 237, 91 L.Ed. 162 (1946) ("[T]he threshold question for the allowance of a claim is whether a claim exists.... If there was no valid claim before bankruptcy, there is no claim for a bankruptcy court either to recognize or to reject."); *Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 84 L.Ed. 281 (1939) ("[A] bankruptcy court has full power to inquire into the validity of any claim asserted against the estate and to disallow it if it is ascertained to be without lawful existence."). Thus, upon an objection to claim, the bankruptcy court has the power under § 502(b) to determine the validity and amount of the claim. *See, e.g., In re Goldberg,* 297 B.R. at 465; *In re Dow Corning Corp.,* 215 B.R. at 354.

■ One bankruptcy court within this circuit has stated that "[§ ] 502(b) requires the bankruptcy court to undertake a two-part analysis." *In re Leroux,* 216 B.R. 459, 468 (Bankr.D.Mass.1997). "First the court must determine the amount of [a creditor's claim] as of the date of the filing of the petition ... [.]" *Id.* (brackets and ellipsis in the original) (internal quotations omitted). "This figure then forms the basis for the second part of the analysis, wherein the court determines how much of the claim should be allowed." *Id.* "Disallowance of a claim negates its validity and existence[.] A claim should be rejected and disallowed [ ] when it has no basis in fact or law, is non-existent or illegal." *Diasonics, Inc. v. Ingalls,* 121 B.R. 626, 630 (Bankr.N.D.Fla.1990) (citation omitted).

■ While the practical effect of disallowance may be to preclude a claimant from "recover[ing] anything from the debtor," *id.* at 631, we are mindful that there are cases upon which ECMC relies in which courts have ruled that the holder of a nondischargeable debt whose claim has been disallowed by the bankruptcy court may nevertheless attempt to collect from the debtor personally after a discharge has been granted. *See, e.g., Florida Dep't of Rev. v. Diaz (In re Diaz),* 647 F.3d 1073, 1088–89 (11th Cir.2011) (state child support authority could pursue debtor for full amount of child-support arrearages despite partial disallowance of the claim during chapter 13 case); *In re Bell,* 236 B.R. at 429 (partial disallowance of a student loan debt did not bar ECMC from collecting any sum in excess of that paid through the debtor's chapter 13 plan); *In re Cruz,* 277 B.R. at 795 (order disallowing ECMC's claim did not discharge debtor's liability to ECMC on account of that claim); *In re Klassen,* 227 B.R. 187, 190 (Bankr.D.Kan. 1998) (in the absence of evidence negating the existence of the debtor's liability on a claim, disallowance was not a final adjudication of the debtor's liability). It is incontestable "that the disallowance of a claim does not necessarily discharge that debt." *In re Cruz,* 277 B.R. at 795. Indeed, " 'disallowance of a claim and nondischargeability are separate issues.' " *In re Diaz,* 647 F.3d at 1090 (quoting *Zich v. Wheeler Wolf Att'ys (In re Zich),* 291 B.R. 883, 886 (Bankr.M.D.Ga.2003)).

■ We respectfully disagree with the cases upon which ECMC relies, to the extent that they hold, or rely for their holding on the proposition that in the context of claims allowance, the bankruptcy court determines only what the estate will pay and cannot bind creditors post-discharge. Those courts have concluded that where § 523(a) precludes discharge of the debt, disallowance of the claim has no effect on the debtor's personal liability post-discharge. In *Diaz*, for example, the United States Court of Appeals for the Eleventh Circuit extended the reasoning of several circuit level tax cases that held confirmation of a chapter 11 plan did not conclusively determine the amount of a nondischargeable tax claim and held that "[t]he [Bankruptcy] Code similarly makes clear that a [c]hapter 13 discharge does not *fix* child-support liabilities made nondischargeable under [ ] § 523." *In re Diaz*, 647 F.3d at 1092 (citing *United States v. Gurwitch (In re Gurwitch)*, 794 F.2d 584, 585 (11th Cir.1986); *DePaolo v. United States (In re DePaolo)*, 45 F.3d 373, 376 (10th Cir.1995); *Fein v. United States (In re Fein)*, 22 F.3d 631, 633 (5th Cir.1994)) (emphasis added); *see also Florida. Dep't of Rev. v. Davis (In re Davis)*, No. 11–15040, 2012 WL 2039914 (11th Cir. June 6, 2012). This rationale, however, conflates disallowance of the claim and dischargeability. The Bankruptcy Code does not use the word "fix" in the context of discharge but instead states that "the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt ... of the kind specified in ... [certain paragraphs] of section 523(a)." 11 U.S.C. § 1328(a)(2). Faced with the argument that § 1328(a) mandates that the disallowed portion of a nondischargeable domestic support obligation passes through bankruptcy unaffected, one court observed:

For debts that are dischargeable, it is perfectly logical and understandable that the discharge which a debtor obtains after successfully completing his or her confirmed chapter 13 plan will be effective as to both debts which have been provided for in such plan and also those which have been "disallowed." Therefore, it may not be appropriate to try to apply this language across-the-board with respect to debts which are both non-dischargeable and disallowed. Even if one attempts to do just that, however, there is a meaningful interpretation for such language.... To re-use an example already noted in this opinion, § 502(b)(2) provides for disallowance of unmatured interest as of the filing date. Accordingly, post-petition interest on a non-dischargeable debt would be disallowed by § 502, but even so would be excepted from the scope of a chapter 13 discharge. *Such a construction of the language is not only entirely reasonable, but it also avoids the absurd situation which would be presented by a construction which would except from discharge child support or educational loan debts which had been disallowed as valid claims against the debtor or the bankruptcy estate on a basis such as payment in full. In short, there is no need to except from discharge a debt which no longer exists.*

*Fort v. Florida Dep't of Rev. (In re Fort)*, 412 B.R. 840, 853 (Bankr.W.D.Va.2009) (emphasis added).

By merging disallowance and dischargeability, the cases relied on by ECMC miss a subtle distinction. The issue is not whether a nondischargeable debt can be discharged by virtue of its disallowance, but whether there is a debt at all where the claim has been disallowed on the grounds of pre-petition payment in full.

By definition, where there is no claim, there is no debt and nothing is discharged. *See* 11 U.S.C. § 101(5)(A) and (12). Other courts have reached the same conclusion. *See In re Fort,* 412 B.R. at 854 ("reject[ing] the contention that a bankruptcy court's determination of any claim's allowed amount can have no effect apart from the bankruptcy case"); *In re Goldberg,* 297 B.R. at 466–67 (disallowing claim for a student loan obligation for failure of consideration and concluding that in the absence of a valid claim, there can be no debt to discharge); *In re Girard,* 243 B.R. 894, 896 (Bankr.M.D.Ala.1999) (where debtor objected to student loan creditor's claim on the grounds that it was incorrect, ECMC was not entitled to any nondischargeable deficiency after full payment of the allowed claim through the debtor's chapter 13 plan); *see also Belton v. Educ. Credit Mgmt. Corp. (In re Belton),* 337 B.R. 471, 474 (Bankr.W.D.N.Y.2006) (noting that while ECMC was not barred from collecting costs omitted from the proof of claim and not provided for in the debtor's plan, the result might have been different had the debtor objected to the claim); *In re Klassen,* 227 B.R. at 190 (noting that had the debtor presented evidence strong enough to negate his liability on the student loan claim with his objection, the court "would then have had to address the vexing question of its power to decide with finality state law liability issues in the context of claim allowance."). Moreover, discharge is not currently the issue, as neither party ever properly presented it to the court below by commencing an adversary proceeding for that purpose. *United Student Aid Funds, Inc. v. Espinosa,* ── U.S. ──, 130 S.Ct. 1367, 1376, 176 L.Ed.2d 158 (2010). Therefore, we find the nature of the objection to be of critical importance to determining what effect it will be accorded outside of bankruptcy. ▮ In light of the foregoing, this Panel concludes that by filing the Claim Objection, Hann invoked the appropriate procedural mechanism provided by the Bankruptcy Code to obtain a determination of both the validity and amount of the Claim. The record reflects that the bankruptcy court conducted a thorough review of the Claim Objection and the Claim, which review included consideration of Hann's testimony as well as the 2006 Hann Affidavit. This process yielded a ruling that the amount of the Claim on the date of Hann's bankruptcy petition was zero. Accordingly, the court allowed the Claim in that amount, which we conclude is tantamount to disallowance. In light of the nature of her objection, namely, that the Claim had been paid pre-petition, we are unpersuaded by ECMC's contention that the June 2006 Order lacks sufficient specific factual findings to support the conclusion that the bankruptcy court found that there was no obligation. The court having concluded that there is no extant claim, there can be no liability on a claim and hence no debt within the meaning of § 101(12). Thus, the June 2006 Order which is the subject of this appeal effectively precluded any further attempt by ECMC to collect on the alleged student loan debt.

In addition to finding ECMC's legal theory unsound, the Panel is struck by the waste of judicial resources that would be occasioned by ECMC's position. Once ECMC filed its proof of claim, Hann was required to object to it in order to avoid having to pay any portion of it through her plan. Her only basis for objection was the fact that the debt had been paid in full pre-petition. The bankruptcy court took evidence and, in disallowing the Claim, necessarily determined that it had, in fact, been paid in full. Nevertheless, ECMC wants a "do over" because, it argues, the wrong procedural mechanism was used. ECMC, however, does not suggest a better mechanism, particularly in light of the fact

that Hann was not seeking a discharge of her student loans because of undue hardship.

### III. Res Judicata[14]

 "The doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered a final judgment on the merits of the claim in a previous action involving the same parties or their privies." *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 528 (9th Cir.1998) (internal quotations citation and omitted). The United States Court of Appeals for the First Circuit has stated that the essential elements of claim preclusion are:

> (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits.

*Grella*, 42 F.3d at 30 (citation omitted). "Once these elements are established, claim preclusion also bars the re[-]litigation of any issue that was, or *might have been*, raised in respect to the subject matter of the prior litigation." *Id.* (citation omitted) (emphasis in the original).

 Courts within this circuit have held that for res judicata purposes, "a default judgment is a final judgment as to the claims raised by the prevailing party." *See In re Stanley–Snow*, 405 B.R. at 19

("most federal courts of appeal have recognized an exception to the general rule that collateral estoppel does not apply to a default judgment," where party chooses not to defend in prior action); *see also New England Ins. Co. v. Sylvia*, 783 F.Supp. 6, 9 (D.N.H.1991); *Maslar v. Martin (In re Martin)*, 468 B.R. 479, 483 n. 8 (Bankr. D.Mass. April 12, 2012). The Panel has previously ruled that a bankruptcy court's order on an objection to claim is a final order. *Neal Mitchell Assoc. v. Braunstein (In re Lambeth)*, 227 B.R. 1, 6 (1st Cir. BAP 1998). Other appellate courts have reached the same conclusion. *See Siegel*, 143 F.3d at 529 ("the allowance or disallowance of a claim in bankruptcy is binding and conclusive on all parties or their privies, and ... furnishes a basis for a plea of res judicata") (internal quotations and citation omitted). As stated by the United States Court of Appeals for the Ninth Circuit, "the allowance or disallowance of a claim in bankruptcy should be given like effect as any other judgment of a competent court, in a subsequent suit against the bankrupt or any one in privity with him." *Id.* (internal quotations and citation omitted).

 Here, the record reflects a final judgment and an obvious identity between the parties. Thus, two of the three elements required for the application of res judicata are satisfied. ECMC essentially

---

**14.** Although Hann's argument entails an assertion of the doctrine of collateral estoppel, res judicata is the applicable preclusion doctrine here. As the Panel recently explained:

> Traditionally, res judicata was the umbrella term for both claim preclusion and collateral estoppel. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994). In modern nomenclature, collateral estoppel is now referred to as issue preclusion and res judicata as claim preclusion. *Eastern Pilots Merger Comm. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 279 F.3d 226, 232 (3rd Cir.2002). The two terms replace "a more confusing lexicon" but

may continue to be "collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). "Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation.... Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue ... actually litigated and resolved in a valid court determination essential to the prior judgment...." *New Hampshire v. Maine*, 532 U.S. 742, 748–49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). *B.B. v. Bradley (In re Bradley)*, 466 B.R. 582, 586 n. 4 (1st Cir. BAP 2012).

challenges the existence of the third element, identity of causes of action, by arguing that claim allowance and discharge are separate issues and therefore neither res judicata nor collateral estoppel apply. We disagree. The adequacy of notice is undisputed, and Hann, by her Claim Objection, clearly challenged the Claim in its entirety. Under these circumstances, ECMC "was not free blithely to forgo its full and fair opportunity" to defend the Claim on the grounds of an alleged distinction between claim allowance and claim discharge. *Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 372 (1st Cir. BAP 2001) (holding that under principles of res judicata, a creditor on notice that his claim will be disallowed in total and discharged under chapter 13 plan may not ignore confirmation process and later assert a claim). As we have previously stated, "[a] creditor who disregards a procedurally proper and plain notice that its interests are in jeopardy does so at its own risk." *Id.* at 374.

By couching its argument in discharge terms, ECMC attempts to circumvent the principles of res judicata for purposes of re-litigating an objection to claim which it initially ignored in the proceedings below. Because the June 2006 Order, however, was a final, binding order for res judicata purposes, it follows that ECMC's efforts to re-litigate its claim are precluded and that, therefore, the amount of Hann's debt to ECMC must stand, conclusively, at zero.

### IV. Sanctions Under § 105

 Section 105(a) permits the court to

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement

court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Section 105(a) "provides the bankruptcy court broad authority to exercise its equitable powers—where necessary or appropriate—to facilitate the implementation of other Bankruptcy Code provisions." *Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 43 (1st Cir.2008) (internal quotations and citations omitted). Because this statute also "gives courts [the] power to ensure compliance with its own orders, [the First Circuit has] referred to it as conferring statutory contempt powers which inherently include the ability to sanction a party." *Id.* at 43–44 (internal quotations and citation omitted). The inherent ability to sanction a party includes "the power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d at 445. The First Circuit has warned, however, that the court's equitable powers pursuant to § 105 must be exercised cautiously:

> [S]ection 105(a) does not provide bankruptcy courts with a roving writ, much less a free hand. The authority bestowed thereunder may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code.

*Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 403 (1st Cir.2002) (citations omitted).

 As found by the court below, ECMC repeatedly telephoned Hann, issued threatening demand letters, and garnished her property, all in utter disregard of the judicial determination that Hann had no liability to ECMC. This conduct is not the only example of ECMC's disregard of the bankruptcy process and the court's authority. From the inception of Hann's bankruptcy case, ECMC was on notice

that she disputed ECMC's claim by virtue of her indication on Schedule F that its debt was disputed. When ECMC filed the Claim, Hann responded with the Claim Objection. Despite the fact that it was properly served with the Claim Objection and with notice of the opportunity to be heard, ECMC chose not to respond or appear at the hearing. The bankruptcy court docket reflects that ECMC also remained silent regarding the Plan. Even after the entry of the June 2006 Order, ECMC failed to avail itself of the appropriate remedies afforded to parties aggrieved by a claim disallowance order, namely a motion to reconsider under § 502(j).[15] Five years later, when pressed by the court during the summary judgment hearing to demonstrate the existence of an amount owed, ECMC remained unready, unwilling, and unable to do so. The record reflects that ECMC studiously ignored every opportunity to be heard regarding the merits of the Claim and then flouted the June 2006 Order through which the court declared its debt nonexistent. Under these circumstances, ECMC's argument that student loan debts are nondischargeable is misleading and irrelevant; it cannot be permitted to divert attention from its violation of the June 2006 Order.

The Panel concludes that ECMC's continued collection activities notwithstanding the court's determination that nothing was owed constituted an abuse of the bankruptcy process and defiance of the court's authority, such that the imposition of attorney's fees as a sanction was warranted,

on those grounds alone.[16] Furthermore, we conclude that the court acted well within its authority when it imposed the sanctions without scheduling an additional hearing. *See Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 864–65 (8th Cir.2000) (upholding imposition of § 105 sanctions without further hearing where individual already received notice that sanctions were being considered and had an opportunity to be heard).

### CONCLUSION

For all of the foregoing reasons, the Orders are **AFFIRMED**.

---

**15.** Section 502(j) provides, in pertinent part, that "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j).

**16.** Although it appears from the Final Judgment that the court focused on ECMC's violation of the discharge injunction as the primary basis for its imposition of sanctions, we are free to affirm the bankruptcy court's ruling "on any ground supported in the record even if the issue was not pleaded, tried, or otherwise referred to in the proceedings below." *Baybank–Middlesex v. Ralar Distribs., Inc.*, 69 F.3d 1200, 1202 (1st Cir.1995) (citation omitted). In this instance, however, Hann specifically requested an award of sanctions for ECMC's violation of the June 2006 Order. Accordingly, we may affirm the Orders on the bankruptcy court based on ECMC's violation of that order.